**Erma RAYFORD, Individually, and Baby Images, Inc., Appellants,**

v.

**The STATE of Texas, Appellee.**

**No. 05–97–00926–CV.**

Court of Appeals of Texas, Dallas.

April 27, 2000.

mercial or business purposes." TEX. CIV. PRAC. & REM.CODE ANN. § 95.001(3).

Phyllis B. Schunck, Clark, Thomas & Winters, P.C., Austin, Joanne Marie Summerhays, Clark, Thomas & Winters, Austin, for Appellants.

Joyce Wein Iliya, Assistant Attorney General, Dallas, for Appellee.

Before Justices OVARD, ROACH, and ROSENBERG[1].

1. The Honorable Barbara Rosenberg, Former Justice, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

## OPINION ON MOTION FOR REHEARING

ROSENBERG, Justice (Assigned).

We grant the State's motion for rehearing, overrule Rayford's motion for rehearing, and vacate our opinion and judgment of January 31, 2000. The following is now the opinion of the Court.

Erma Rayford, individually, and Baby Images, Inc. (collectively, Rayford) appeal an injunction granted to the State of Texas (the State) under the Texas Food, Drug and Cosmetic Act[2] (FDCA) and the Texas Deceptive Trade Practices Act[3] (DTPA) preventing her from possessing and using a medical device, a fetal ultrasound scanner, for nondiagnostic use. In two issues, Rayford challenges the injunction and award, arguing the FDCA and the DTPA do not apply to or prohibit her nondiagnostic use or the advertising of her use. In a third issue, Rayford contends this suit was groundless and brought in bad faith. Under the facts of this case, we hold the State proved a misbranding violation of the FDCA for Rayford's nondiagnostic use of the ultrasound scanner as a matter of law. We affirm in part and reverse and render in part.

### BACKGROUND

In 1989, Rayford, a qualified ultrasound sonographer, purchased an RT–50 fetal ultrasound scanner (RT–50) from General Electric (GE) and went into business as Baby Images, Inc. She provided ultrasound scanning of unborn babies and videotapes of the scan and advertised the videos as keepsakes through brochures she mailed and distributed by hand. She performed ultrasound scanning for nondiag-

nostic purposes and did not require that consumers have a prescription from a licensed physician.

The Texas Department of Health inspected Rayford's facilities several times between 1994 and 1997. On each occasion, the inspector issued a Notice of Detention. The inspector found that Rayford's possession and use of the RT–50 adulterated and misbranded it.

In 1996, the State brought an action seeking an injunction and penalties under the FDCA and DTPA. Both Rayford and the State presented motions for partial summary judgment. The trial court granted the State's motion for partial summary judgment on the issues of adulteration and misbranding a medical device in commerce under the FDCA. After a hearing on the merits, the trial court found Rayford falsely advertised the device and violated the DTPA. The trial court entered a permanent injunction and awarded civil penalties and attorney's fees to the State. Rayford appeals.

### THE MOTION FOR PARTIAL SUMMARY JUDGMENT

Rayford challenges the entry of partial summary judgment for the violation of section 431.021(b) of the FDCA, which prohibits the adulteration or misbranding of any medical device in commerce.[4] Rayford asserts her use of the RT–50 ultrasound device for a nonmedical purpose does not make the device adulterated or misbranded in commerce.[5] The State responds that the federal and state legislative schemes apply to the ultimate user of a device, not just the manufacturer, distributor, or seller of the device. The State argues Ray-

---

2. *See generally* TEX. HEALTH & SAFETY CODE ANN. §§ 431.001–.278 (Vernon 1992 & Supp.2000).

3. *See generally* TEX. BUS. & COM. CODE ANN. §§ 17.41–.854 (Vernon 1987 & Supp. 2000) (known as the Deceptive Trade Practices–Consumer Protection Act).

4. Although the action under the FDCA was also brought under section 431.021(a), which prohibits the introduction of an adulterated or misbranded device into commerce, the State stipulated at oral argument that the trial court did not make its findings based on that provision.

5. Both the State and Rayford stipulated the device was not used for a medical purpose.

ford's use of the ultrasound scanner for fetal imaging without a diagnostic purpose was a "new intended use," which gives the device a status as a class III device under the Federal Food Drug and Cosmetic Act[6] (FFDCA), thereby making its use adulteration under the Texas act. *See* 21 U.S.C.A. § 360e(a)(1) (West 1999); TEX. HEALTH & SAFETY CODE ANN. § 431.111(f)(1) (Vernon Supp.2000). The State further argues the RT–50 was not properly labeled and Rayford's use without a prescription was misbranding in commerce.

## Standard of Review

The standards for reviewing this partial summary judgment are well established. The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Where both parties file motions for summary judgment and one is granted and one is denied, we may consider all questions presented and render the decision the trial court should have rendered. *See Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988) (orig.proceeding) (per curiam). If a movant does not show its entitlement to summary judgment as a matter of law, we must remand the case to the trial court. *See Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 829 (Tex.1970).

The controversy here is whether, based on undisputed facts, Rayford adulterated

or misbranded the RT–50. The undisputed facts controlling this case are:

- The RT–50 is a medical device.
- GE filed a premarket notification (510(k)) with the Food and Drug Administration (FDA) representing that the RT–50's intended diagnostic use was for fetal imaging and other abdominal/gynecological uses.
- Rayford used the RT–50 ultrasound device for fetal videography, without diagnostic purpose.
- The FDA had not approved the RT–50 for a nondiagnostic use.
- Rayford's RT–50 did not display adequate directions for use by a layperson.
- Erma Rayford is not a practitioner licensed to practice medicine in Texas.
- Rayford possessed the RT–50 without an order from a licensed practitioner in Texas.
- Rayford's use of the RT–50 was not supervised by a practitioner licensed in Texas.

With the summary judgment standards in mind, we now examine whether these facts support or defeat the violations of law asserted in the motions for partial summary judgment.

## Adulteration

### *Applicable Law*

A drug or device is deemed adulterated under Texas law if it is a class III device under the federal regulations with no premarket approval or pending application for approval for sale. *See* TEX. HEALTH & SAFETY CODE ANN. § 431.111(f)(1).[7]

---

**6.** *See generally* 21 U.S.C.A. §§ 360–397 (West 1999).

**7.** Section 431.111(f)(1) provides that "[a] drug or device shall be deemed to be adulterated ... if it is a class III device:

(A)(i) that is required by a regulation adopted under Section 515(b) of the federal Act to have an approval under that section of an application for premarket approval and that is not exempt from Section 515 as

provided by Section 520(g) of the federal Act [21 U.S.C.A. § 360j(g) (West 1999)]; and

(ii) (I) for which an application for premarket approval or a notice of completion of a product development protocol was not filed with the United States Food and Drug Administration by the 90th day after the date of adoption of the regulation; or

(II) for which that application was filed and approval was denied or withdrawn,

The Medical Device Amendments of 1976, Pub.L. No. 94–295, 90 Stat. 539 (1976) (codified at 15 U.S.C.A. § 55 and in various sections of 21 U.S.C.A.) (MDA), amending the FFDCA, require the FDA to classify medical devices intended for human use into one of three classes: I, II, or III. *See* 21 U.S.C.A. § 360c(b)(1) (West 1999). A class III medical device is subjected to an extensive and rigorous premarket approval process. *See id.* § 360e (West 1999). The MDA requires premarket approval for class III medical devices because such devices present "a potential unreasonable risk of illness or injury." *Id.* § 360c(a)(1)(C)(ii)(II). Once the FDA gives premarket approval, federal regulations prohibit the device from being "manufactured, packaged, stored, labeled, distributed, or advertised in a manner that is inconsistent with any conditions to approval specified in the [premarket] approval order for the device." 21 C.F.R. § 814.80 (1999). All devices are class III after the effective date of the MDA unless the manufacturer obtains an FDA determination that the device is substantially equivalent to a predicate device that either did not require premarket approval or was classified in class I or II:

> A device classified in class III under this paragraph shall be classified in that class until the effective date of an order of the Secretary under paragraph (2) ... classifying the device in class I or II.

21 U.S.C.A. § 360c(f)(1). Ultrasound devices are classified as class II devices "to provide a visual representation ... of a fetus, for diagnostic purposes." 21 C.F.R. § 884.2225(a), (b) (1999).

Federal regulations provide explicit instructions for reclassification of this device. *See id.* § 884.3(b) (1999). First, "[a]ny new, not *substantially equivalent,* device" introduced into commerce after May 28, 1976, including "a device formerly marketed that has been substantially altered," is automatically classified by statute as class III. *Id.* (emphasis added); *see also* 21 U.S.C.A. § 360c(f). Second, the regulation, like the statute, discusses a "new intended use" of an existing obstetric device: "If [the] FDA knows that a device being commercially distributed may be a 'new' device ... because of any *new intended use* ..., [the] FDA may codify the statutory classification of the [obstetric] device into class III for such new use." 21 C.F.R. § 884.3(b) (1999) (emphasis added).

*Substantially equivalent,* with respect to a device being compared to a predicate device, means the device has "the same intended use" as the predicate device and the device has the same or substantially equivalent technology. 21 U.S.C.A. § 360c(i)(1)(A). A change is a modification that could significantly affect the safety or effectiveness of the device. *See* 21 C.F.R. § 807.81(a)(3) (1999). Examples of this kind of change are changes in design, material, chemical composition, energy source, or manufacturing process. *See id.* § 807.81(a)(3)(I) (1999). A change that affects substantial equivalence is also a major change or modification in the intended use of the device. *See id.* § 807.81(a)(3)(ii) (1999); CENTER FOR DEVICES AND RADIOLOGICAL HEALTH, U.S. DEP'T OF HEALTH & HUMAN SERVS., DECIDING WHEN TO SUBMIT A 510(K) FOR A CHANGE

for which that notice was filed and was declared incomplete, or for which approval of the device under the protocol was withdrawn;

(B) that was classified under Section 513(f) of the federal Act [21 U.S.C.A. § 360c(f)] into class III, which under Section 515(a) of the federal Act [21 U.S.C.A. § 360e] is required to have in effect an approved application for premarket approval, that is not exempt from Section 515 as

provided by Section 520(g) of the federal Act and that does not have the application in effect; or

(C) that was classified under Section 520(*l*) of the federal Act into class III, which under that section is required to have in effect an approved application under Section 515 of the federal Act, and that does not have the application in effect ....

TEX. HEALTH & SAFETY CODE ANN. § 431.111(f)(1).

TO AN EXISTING DEVICE 4 (510(k) (Memorandum # K–97–1, January 10, 1997)). The statutory scheme provides that the intended use is to be determined by the persons legally responsible for the labeling of the device. *See* 21 C.F.R. § 801.4 (1999). "The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article." *Id.*

### Discussion

■ Because ultrasound devices are class II devices, for Rayford's RT–50 to be a class III device, it must not be substantially equivalent to the ultrasound devices already approved. First, GE submitted a premarket notification for the RT–50 as a device substantially equivalent to one previously marketed, as required for a class II device. The notification described the technical aspects of the device as well as its intended use, stating, "The RT–50 is intended to be used for abdominal, obstetric and gynecological ultrasound examinations in hospitals and clinics where ultrasound exams are routinely performed." The notification also indicated the RT–50's intended diagnostic use was fetal imaging. The FDA found the RT–50 to be substantially equivalent to other approved ultrasound devices. In the hands of GE, the RT–50 remained class II.

Next, because Rayford used the RT–50 for nondiagnostic uses, we examine whether Rayford's use destroyed the RT–50's substantial equivalence to the ultrasound devices by changing the intended use.[8] Rayford used the RT–50 for fetal imaging, but not for approved medical or diagnostic purpose. Rayford's unapproved nondiagnostic use is not the intended use of the RT–50 as established by GE. This nondiagnostic use is a new use. Whether this

nondiagnostic use is a new intended use is determined by the person responsible for labeling the RT–50. *See* 21 U.S.C.A. § 360c(i)(1)(E)(i)(I); 21 C.F.R. § 801.4 (1999). The person who is responsible for labeling is the person who engages in the manufacture, preparation, propagation, or processing of the device, including actions in furtherance of the distribution of the device from the original manufacturer to the person who makes final delivery or sale to the ultimate user. *See* 21 U.S.C.A. §§ 360(a), (c), (k), 360d, 360e (West 1999). Rayford bought the RT–50. She is a user and possessor, not a manufacturer or distributor, of the RT–50. Further, she did not sell the RT–50, that is, she did not sell or distribute the RT–50 to the ultimate user. *See* BLACK'S LAW DICTIONARY 1365 (7th ed.1999) (defining *seller* as "the transferor of property in a contract of sale"). While Rayford was selling a service in using the machine, the federal statutory scheme does not include a seller of a device's service as a person responsible for labeling. Therefore, Rayford does not have labeling responsibility, and Rayford's nondiagnostic use of the RT–50 did not "substantially alter" it and is not a "new intended use." Accordingly, Rayford's RT–50 continued its class II designation.

Finally, the summary judgment affidavits of Byron Tart, Director of Promotion and Advertising Policy and Staff for the Compliance Office of the FDA, show the FDA was aware of nonmedical use of the ultrasound device. Nevertheless, the FDA did not codify the nonmedical use to class III as is provided for in the regulations.[9]

Because Rayford is not the person with labeling responsibility and the FDA did not classify the known use as class III, the RT–50 remains class II. Because we have concluded the device is not a class III

8. There was no change in the technology of Rayford's RT–50 from the predicate device. The device physically maintained its substantial equivalence in Rayford's possession.

9. The record only reflects the FDA has not found substantial equivalence for nonmedical

fetal video scanning, without clinical benefit, for any GE ultrasound device. This fact does not establish as a matter of law the necessity of seeking a premarket approval for RT–50 for a substantial alteration.

device, the State did not prove Rayford had an adulterated device in commerce under the FDCA. The trial court erred in granting the State's partial summary judgment on this issue and erred in denying Rayford's partial motion for summary judgment on the claim of adulteration. We resolve Rayford's first issue regarding adulteration in her favor.

## Misbranding

■ A device may be misbranded by improper labeling or unapproved use. *See* TEX. HEALTH & SAFETY CODE ANN. § 431.112(f)(1), (r) (Vernon Supp.2000). Under section 431.112(f)(1) and (2) of the FDCA, a device is misbranded unless it has adequate directions for use and has been exempted from requirements for adequate warnings against specified improper use by appropriate regulations. *See id.* § 431.112(f)(1), (2). As discussed above, the federal regulatory scheme does not contemplate a user or possessor having labeling responsibilities:

The intended uses of an article may change after it has been introduced into interstate commerce by its manufacturer. If, for example, a packer, distributor, or seller intends an article for different uses than those intended by the person from whom he received the devices, such packer, distributor, or seller is required to supply adequate labeling in accordance with the new intended uses.

21 C.F.R. § 801.4 (1999). If a manufacturer knows a device is to be "used for conditions, purposes, or uses other than the ones for which he offers it," the manufacturer must provide adequate labeling. *Id.* An owner or operator of a device is only required to maintain labeling and advertising for a device for three years. *See id.* § 807.31(c) (1999).

It is undisputed that the FDA exempts all currently marketed obstetric ultrasound devices from labeling requirements for adequate directions for use. *See id.* § 801.109 (1999). There was no evidence GE knew of a new use requiring additional labeling. Nor was there evidence Rayford was required to keep any labeling more than three years after her purchase. Nevertheless, the State would require a user to label and provide directions. Requiring Rayford to label the RT–50 is in direct conflict with federal regulations that exempt the device from labeling. *See id.* § 808.1(d)(6)(ii) (1999) (providing state requirements prohibiting manufacture of misbranded devices are preempted to the extent they establish substantive requirements "different from, or in addition to, a [f]ederal requirement established under the [FFDCA]"). Additionally, Rayford's use of the machine is not the sale or resale of a device that makes her responsible for a label. Therefore, we conclude section 431.112(f)(1) does not support summary judgment on misbranding.

■ Next, a device is misbranded if it is a restricted device that is used in violation of section 360j(e) of the FFDCA. *See* TEX. HEALTH & SAFETY CODE ANN. § 431.112(r). The FFDCA provides that a restricted device is only to be used on written or oral authorization of a physician. *See* 21 U.S.C.A. § 360j(e) (West 1999). A restricted or prescription device is a device that cannot have adequate directions for lay use. *See* 21 C.F.R. § 801.109 (1999). These devices are exempt from the requirement of directions because they are required to be in the possession of physicians or used only on order of physicians. *See id.* § 801.110 (1999).

The summary judgment evidence demonstrates the RT–50 is exempt from labeling for adequate directions for lay use. That exemption makes the RT–50 a prescription device. It is undisputed that Rayford used the device without the supervision or order of a licensed practitioner. Therefore, Rayford's use was a violation of section 431.112(r), making the RT–50 misbranded in commerce as a matter of law, and the trial court was correct in granting the summary judgment on this misbrand-

ing ground. We resolve Rayford's first issue regarding misbranding in commerce against her.

## THE TRIAL

Rayford complains the trial court erroneously entered the injunction, civil penalties, and attorney's fees because she did not violate the adulteration, misbranding, and false advertising provisions of the FDCA or section 17.46 of the DTPA. The injunction prohibits the use and advertising of the RT–50 for any nondiagnostic purpose. It also prohibits the use of the scanner without written order of a physician. Rayford argues she did not violate any statute by her use of the RT–50. Our conclusion that Rayford misbranded the RT–50 in commerce is sufficient to warrant an injunction.[10] Nevertheless, we will examine the trial record to see if the State proved the remaining allegations supporting all terms of the injunction and the penalties.

### Standard of Review

When reviewing the trial court's findings of fact and conclusions of law, the fact findings have the same force and dignity as a jury's verdict on jury questions. *See* TEX. R. CIV. P.296; *FDIC v. F & A Equip. Leasing,* 854 S.W.2d 681, 684 (Tex. App.—Dallas 1993, no writ); *MJR Corp. v. B & B Vending Co.,* 760 S.W.2d 4, 10 (Tex.App.—Dallas 1988, writ denied). We apply the same standards in reviewing the legal or factual sufficiency of the evidence supporting the trial court's fact findings as we apply to reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a jury question. *See Baker v. Baker,* 719 S.W.2d 672, 674–75 (Tex. App.—Fort Worth 1986, no writ); *see also Cain v.. Bain,* 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (describing standard for factual sufficiency review); *F & A Equip. Leasing,* 854 S.W.2d at 685 (describing

standard for legal sufficiency review). When reviewing the trial court's legal conclusions, we evaluate them independently to determine their correctness. *See Dallas Morning News v. Board of Trustees,* 861 S.W.2d 532, 536 (Tex.App.—Dallas 1993, writ denied).

The findings of fact concerning the false advertisement allegations and DTPA violations are uncontroverted. The trial court found Rayford advertised her ultrasound device for nonmedical purposes without clinical benefit. Rayford did not disclose a prescription was necessary for a fetal scan, and there was no medical supervision of her business. Therefore, keeping the standards in mind, we now examine the validity of the trial court's legal conclusions finding false advertisement in violation of the FDCA and DTPA based on these facts.

### False Advertisement under The FDCA

■ The FDCA defines *advertising* as "all *representations* disseminated in any manner or by any means, other than by labeling, for the purpose of *inducing,* or that are likely to induce, directly or indirectly, *the purchase of . . . devices . . . .*" TEX. HEALTH & SAFETY CODE ANN. § 431.002(1) (Vernon Supp.2000) (emphasis added). All the evidence demonstrates the advertising was not for the sale of a device but of a scanning service. These facts as a matter of law do not show a violation of the FDCA or support the injunction. Therefore, the trial court erred when it found Rayford violated the false advertising provisions of the FDCA, and we resolve Rayford's second issue in her favor to this extent.

### False Advertising under the DTPA

■ The State brought its deceptive trade practices allegation under section 17.46(b)(23) of the business and commerce

---

**10.** The remedy for a violation of the FDCA is an injunction. *See* TEX. HEALTH & SAFETY CODE ANN. § 431.047 (Vernon 1996).

code,[11] which provides that a prohibited act is:

> the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

TEX. BUS. & COM. CODE ANN. § 17.46(b)(23) (Vernon Supp.2000). The State argues Rayford did not disclose to the consumer that the use was not approved or a prescription was required to obtain a sonogram. Even if these would be proper disclosures, the State presented no evidence that the failure to · disclose this information induced a consumer into a transaction she would not have entered had she known this information. The State did not meet its burden as a matter of law. Therefore, we conclude the trial court erred when it found Rayford violated the false advertising provisions of the DTPA, and we resolve Rayford's second issue in her favor to this extent.

### FRIVOLOUS ACTION

■ In her third issue, Rayford contends she is entitled to recover attorney's fees, expenses, and costs because this action is frivolous, unreasonable, or without foundation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 105.002 (Vernon 1997). The record does not show Rayford obtained a ruling on her motion for frivolous claim. Therefore, Rayford failed to preserve error. *See* TEX. R. APP. P. 33.1. Further, judgment was not awarded on favor of Rayford, as required for recovery by section 105.002(2). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 105.002(2). We resolve Rayford's third issue against her.

### CONCLUSION

Because of our resolution of Rayford's first issue, we reverse and render the trial court's January 17, 1997 order granting plaintiff's motion for partial summary judgment on the issue of adulteration in commerce, and we affirm on the issue of misbranding in commerce. Because of our resolution of Rayford's second issue, we reverse and render the trial court's May 5, 1997 final judgment and permanent injunction on the false advertising counts under the FDCA and the DTPA. The misbranding violation of the FDCA supports a permanent injunction against Rayford, civil penalties, and reasonable attorney's fees and costs. The misbranding violation, however, does not support paragraph (5) of the trial court's final judgment and permanent injunction, which requires Rayford to label the RT–50, because it is in conflict with federal regulations. Consequently, we modify the final judgment and permanent injunction by deleting paragraph (5). We affirm the final judgment and permanent injunction in all other respects. We affirm the final judgment and permanent injunction as modified.

---

11. The State stipulated at oral argument that the *misleading statements* were Rayford's nondisclosures prohibited under section 17 .46(b)(23) of the business and commerce code. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(23).