

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-12-00453-CV

---

PATRICK R. COX, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

---

On Appeal from the 200th District Court
Travis County, Texas
Trial Court No. D-1-GV-10-000486, Honorable Orlinda Naranjo, Presiding

---

July 1, 2014

OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Appellant, Patrick R. Cox, appeals a judgment of the 200th District Court of Travis County[1] entered in accordance with a jury verdict finding that he violated the Texas Deceptive Trade Practices Act (DTPA) 15,625 times. On the basis of this finding, Cox was personally ordered to pay $14,622,102 in restitution, $31,250,000 in civil penalties,

---

[1] This case was transferred to this Court pursuant to the Texas Supreme Court's docket equalization efforts, *see* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005), from the Third District Court of Appeals in Austin. Texas Rule of Appellate Procedure 41.3 requires us to apply the law of the transferor court if there is a conflict between the decisions of the transferor court and this court. The parties have not identified and we have not discovered a conflict between the decisions of this Court and the decisions of the Austin court that would invoke this rule in this opinion.

and $315,332.67 in attorney's fees. Furthermore, the judgment includes a permanent injunction against Cox. We will reverse.

Factual and Procedural Background[2]

Cox is a certified public accountant. Starting in 2001, Cox offered tax resolution services to clients through his Houston-based firm, Cox and Associates. In 2004, Cox established TMIRS Enterprises, Ltd., a limited partnership that assumed the tax resolution business of Cox and Associates. TMIRS's general partner was TM GP Services, LLC. In 2009, Cox formed TaxMasters, Inc., which assumed the tax resolution business that was being conducted by TMIRS. Both TMIRS and TaxMasters, Inc. operated under the name "TaxMasters." Cox owned TMIRS and was President, Chief Executive Officer, Chairman of the Board, and majority shareholder of TaxMasters, Inc.

In 2005, TaxMasters began advertising its tax resolution services through nation-wide television commercials. Cox was TaxMasters's spokesman in these commercials. When a potential client would call TaxMasters, they would speak to a commissioned sales associate, titled "tax consultant" for most of the time period relevant to this case, who would explain the services offered by TaxMasters. Frequently, these sales associates would make deceptive and misleading statements regarding the services TaxMasters offered. As part of the initial sales call, the sales associates would obtain a credit card number or bank draft authorization as a means of obtaining payment. After providing a means of payment, clients would be sent an engagement agreement and

---

[2] There is no dispute that TaxMasters, Inc. and TMIRS Enterprises, Ltd. engaged in false, deceptive, and misleading trade practices. The issue in this appeal relates to whether it was proper to find Cox personally liable under the facts of this case.

IRS forms necessary for TaxMasters to contact the IRS on the client's behalf. While Cox did not personally participate in TaxMasters's day-to-day operations, it is apparent that he was aware of many of the false, deceptive, and misleading practices of TaxMasters.

In May of 2010, the State of Texas filed the present public enforcement action against TaxMasters, Inc., TMIRS Enterprises, Ltd., and Cox. In March of 2012, TaxMasters, Inc., TMIRS, and TM GP Services, LLC filed bankruptcy. After a seven day trial, the jury reached a verdict finding TaxMasters, Inc., TMIRS, and Cox engaged in false, misleading, and deceptive trade practices. The jury assessed restitution, civil penalties, and attorney's fees against each of the defendants. The trial court accepted the jury's findings and entered judgment in accordance therewith on June 12, 2012.

Both before and after the jury's verdict and the trial court's judgment, Cox argued to the trial court that there was no basis upon which to find him personally liable for violating the DTPA. Cox argued that he did not personally violate the DTPA and that, as such, he could not be held personally liable for TaxMasters's and TMIRS's violations without some sort of finding justifying piercing the corporate veil. No veil-piercing theory was pled or proven by the State. Cox presented this contention to the trial court by way of a motion for no-evidence summary judgment that was denied. He again presented this contention by way of motion for directed verdict, which was also denied by the trial court. Following trial, Cox filed motions for new trial, to disregard jury findings, and for

judgment notwithstanding the verdict. Cox's post-judgment motions were denied by the trial court. Cox timely filed notice of appeal.[3]

By his appeal, Cox presents seven issues. By his first issue, Cox contends that the trial court erred when it entered judgment against Cox, individually, for actions taken by the company defendants. By his second issue, Cox contends that the trial court erred in submitting jury questions relating to Cox's individual liability when there was no evidence or factually insufficient evidence to support the submission. By his third issue, Cox contends that the trial court erred in submitting multiple theories of liability to support the restitution and civil penalty questions. By his fourth issue, Cox contends that the trial court abused its discretion by admitting a particular exhibit. By his fifth issue, Cox contends that the restitution award should be reversed because the trial court erred in attempting to preserve its jurisdiction over the award. By his sixth issue, Cox contends that the permanent injunction against Cox should be reversed. Finally, by his seventh issue, Cox contends that the award of attorney's fees should be reversed.

## Cox's Individual Liability

As an initial matter, we must determine what actions will subject Cox to personal liability. Cox concedes that the evidence establishes that the TaxMasters companies violated the DTPA but he contends that, in the absence of veil-piercing, he can only be held liable for actions he personally took that violated the DTPA. The State contends that, in addition to personal violations of the DTPA, Cox should be held personally liable for the actions of TaxMasters's employees because Cox was the "guiding spirit" of the

---

[3] Neither of the TaxMasters companies appealed.

company and he created, approved, or failed to prevent the practices of TaxMasters that violated the DTPA.

Generally, a corporate officer's actions taken on the corporation's behalf are deemed to be acts of the corporation. *See Latch v. Gratty, Inc.*, 107 S.W.3d 543, 545 (Tex. 2003) (per curiam) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)). However, it has long been the rule in Texas that "[a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment." *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984) (op. on reh'g); *see Miller v. Keyser*, 90 S.W.3d 712, 717 (Tex. 2002). In an action seeking to hold an agent individually liable for his own tortious or fraudulent acts, the corporate veil need not be pierced. *Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex. App.—San Antonio 2008, no pet.). As applicable to this case, an agent of a corporation may be held personally liable for his own violations of the DTPA.[4] *See Miller*, 90 S.W.3d at 718; *Weitzel v. Barnes*, 691 S.W.2d 598, 601 (Tex. 1985); *Cimarron Hydrocarbons Corp. v. Carpenter*, 143 S.W.3d 560, 564 (Tex. App.—Dallas 2004, pet. denied). Neither party to the present appeal challenges that personal violations of the DTPA will subject Cox to personal liability.

The State did not seek or obtain findings that would impute corporate liability onto Cox, such as piercing the corporate veil. *See Light v. Wilson*, 663 S.W.2d 813, 814-15 (Tex. 1983) (agent will not be held personally liable in the absence of a finding that agent personally violated the DTPA or a finding on veil piercing). The Texas

---

[4] Cox's alleged violations of the DTPA sound in tort. *See, e.g., Clary Corp. v. Smith*, 949 S.W.2d 452, 463 (Tex. App.—Fort Worth 1997, writ denied).

5

Supreme Court has held that, in the absence of evidence of personal misrepresentations or alter ego, a personal judgment against corporate agents for actions taken on behalf of the corporation is error. *See Karl & Kelly Co. v. McLerran*, 646 S.W.2d 174, 175 (Tex. 1983) (per curiam).

The State argues that we should be guided by federal case law applying the Federal Trade Commission Act. *See* TEX. BUS. & COM. CODE ANN. § 17.46(c)(1) (West 2011). These federal cases hold that the actions of a corporation can be imputed onto an individual if the individual personally participated in the business; committed, oversaw, or was purposefully ignorant of the deceptive actions of the business; and was so involved in the business as to be seen as the "guiding spirit" of the business and its deception. *See Texas v. Am. Blast Fax, Inc.*, 164 F.Supp.2d 892, 898 (W.D. Tex. 2001); *see also Morrison v. W. Builders of Amarillo, Inc.*, 555 F.3d 473, 481 (5th Cir. 2009); *FTC v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 574-75 (7th Cir. 1989).

Only a few Texas courts have discussed the "guiding spirit" concept. Each of these cases has involved whether an individual who acted on behalf of a corporation should be subject to jurisdiction in Texas. However, in each of these cases, whether jurisdiction was found depended on allegations of the individual's own personal tortious or fraudulent actions. *See Tabacinic v. Frazier*, 372 S.W.3d 658, 669-70 (Tex. App.—Dallas 2012, no pet.) (discussing "guiding spirit" but concluding that the evidence established that jurisdiction over the Tabacinics was proper due to the acts they personally committed); *Barnhill v. Automated Shrimp Corp.*, 222 S.W.3d 756, 769 (Tex. App.—Waco 2007, no pet.) (discussing "guiding spirit" but concluding that Barnhill

6

"directly participated" by personally falsifying SEC filings and basing jurisdiction on those actions); *Ennis v. Loiseau*, 164 S.W.3d 698, 707-10 (Tex. App.—Austin 2005, no pet.) (discussing "guiding spirit" but concluding that pleading sufficiently alleged that Ennis personally committed tortious and fraudulent acts subjecting him to jurisdiction in Texas); *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 734 (Tex. App.—Dallas 2003, no pet.) (holding that power to veto board decision to merge was not enough to subject defendants to specific jurisdiction as "guiding spirits").

Thus, no Texas court has applied the federal "guiding spirit" doctrine to hold an individual liable under the DTPA for actions taken by a corporation. Further, the Texas courts that have addressed "guiding spirit" in the context of Texas's exercise of jurisdiction have required some direct personal action on the part of the person alleged to be the "guiding spirit" of the corporation. As such, making corporate agents personally liable for DTPA violations based solely on being the "guiding spirit" of a corporation that violates the DTPA would be a change in the law. Generally, changes in the law should be left to the Texas Supreme Court or the Texas Legislature. *See Campus Mgmt., Inc. v. Kimball*, 991 S.W.2d 948, 952 (Tex. App.—Fort Worth 1999, pet. denied); *Amador v. Tan*, 855 S.W.2d 131, 134 (Tex. App.—El Paso 1993, writ denied).

As such, we conclude that, because the State did not obtain a finding that would allow the corporate veil to be pierced, for Cox to have been found personally liable, the evidence had to establish that Cox personally violated the DTPA. This implicates Cox's first and second appellate issues, the trial court's entry of judgment against Cox individually and the submission of jury questions relating to Cox's individual liability in the absence of legally or factually sufficient evidence.

7

## Sufficiency of the Evidence

Based on our analysis above, we must determine whether the State presented sufficient evidence to establish that Cox personally violated the DTPA. We will do this by reviewing each of the jury's findings to determine whether the evidence supports the imposition of personal liability under the DTPA against Cox. *See Simmons & Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 417 (Tex. 1955) ("To sustain the judgment[,] it must appear there was evidence of probative value to support the finding of the jury on the issue *actually submitted*." (emphasis added)).

According to *City of Keller v. Wilson*, "'[n]o evidence' points must, and may only, be sustained when the record discloses one of the following situations: (a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; [or] (d) the evidence establishes conclusively the opposite of the vital fact." 168 S.W.3d 802, 810 (Tex. 2005). Our review requires viewing the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding all contrary evidence unless reasonable jurors could not. *Id.* at 807. We may not substitute our judgment for that of the trier of fact as long as the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id.* at 822. This is but another way of saying that, as long as there is more than a scintilla of evidence to support the jury's answer to the fact question at issue, the legal sufficiency challenge must fail. *See Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 552 (Tex. 2004).

In a factual sufficiency review, we consider all of the evidence both supporting and contrary to the jury's answer to the fact question at issue. *See Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). Because the State bore the burden of proof at trial, we will only reverse if we find that the evidence supporting the jury's finding is so weak or so contrary to the finding as to be clearly wrong and manifestly unjust. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex. App.—Amarillo 1988, writ denied).

The first jury question contained three subparts, each of which asked the jury about whether the defendants accepted payments from consumers without making disclosures regarding the non-refundable nature of the payments and the assessment of an administrative fee. The jury answered yes as to Cox. However, the evidence does not support this jury finding. There is no evidence that Cox ever accepted, directly or indirectly, payment from any consumers. All of the evidence reflects that payments were made to TaxMasters. Further, there is no evidence that Cox failed to make any disclosures or even that Cox directed others not to make these disclosures. Rather, the evidence establishes that only TaxMasters failed to make these disclosures. The State argues that Cox knew that TaxMasters was not making these disclosures and did nothing to remedy the situation, and that Cox was the only person with authority to authorize refunds but refused to authorize refunds even after TaxMasters received payments without making the disclosures. Even were we to assume that the evidence established that Cox possessed such knowledge, his failure to remedy the situation is not evidence that would support the jury's answer to jury question number one. While the evidence is in conflict regarding how often Cox would authorize refunds, there is no evidence that Cox ever personally failed to disclose or directed anyone else not to

9

disclose the non-refundable nature of the payments or the assessment of an administrative fee. *See Miller*, 90 S.W.3d at 718; *Leyendecker & Assocs.*, 683 S.W.2d at 375. Consequently, we conclude that there is no evidence to support the jury's answer to the first jury question.

The second jury question was dependent on an affirmative finding on the first question. While the jury made this affirmative finding, we have just concluded that there was no evidence to support the jury's answer to question one as it relates to Cox individually. As such, the jury should not have answered the second jury question.

The third jury question included six subparts that specifically addressed six of the "laundry list" violations of the DTPA. *See* TEX. BUS. & COM. CODE ANN. § 17.46(b). The jury found that Cox violated five of the six. However, the evidence does not support the five DTPA laundry list violations found by the jury to have been committed by Cox individually.

The first subpart asked the jury whether the defendants caused "confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services." *See id.* § 17.46(b)(2). Generally speaking, this provision of the DTPA is "primarily concerned with deception in the origin or endorsement of a good or service." *Prairie Cattle Co. v. Fletcher*, 610 S.W.2d 849, 853 (Tex. Civ. App.—Amarillo 1980, writ dism'd)*.* Review of the record reflects that there is no evidence that Cox ever represented that any entity or group endorsed, approved, or sponsored the work of TaxMasters or that the services provided by TaxMasters originated from any other source. Consequently, we conclude that there is no evidence that Cox personally took

10

any action that caused confusion or misunderstanding as to the source, sponsorship, approval, or certification of TaxMasters's goods or services.[5]

The second subpart asked the jury whether the defendants caused "confusion or misunderstanding regarding the affiliation, connection, or association with, or certification by, another." *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(3). Review of the record reflects that there is no evidence that Cox ever represented that TaxMasters had any affiliation, connection, or association with any other entity. Further, there is no evidence that Cox represented that TaxMasters held any particular certification.

The third subpart asked the jury whether Cox represented "that goods or services have sponsorship, approval, characteristics, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation or connection which he or it does not." *See id.* § 17.46(b)(5). The State contends that Cox should be liable for representations that tax debts would be settled for pennies on the dollar that were included in TaxMasters's sales scripts. However, as discussed above, Cox is not personally liable for the actions of TaxMasters's employees unless he made or directed the misrepresentation. *See Miller*, 90 S.W.3d at 718; *Leyendecker & Assocs.*, 683 S.W.2d at 375. There is no evidence that Cox personally developed the sales script or directed TaxMasters's employees to use the sales script. There is no evidence in the record that Cox represented that the services of himself or TaxMasters had

---

[5] The lack of evidence of Cox's personal violation of this "laundry list" item can be seen in the State's statement, during the charge conference, that, "We would concede to the extent that his argument is that it didn't come out of Pat Cox's mouth. We can see that. I don't think there is evidence on that, but we think that's not the limit of his liability. [H]is liability is that he is the person, the guiding spirit of the company." As such, the State essentially acknowledged that Cox did not make any direct representation regarding "the source, sponsorship, approval, or certification of goods or services." Rather, the State sought derivative liability due to Cox's status as the "guiding spirit" of TaxMasters, a theory of liability that this Court has rejected above.

sponsorship, approval, characteristics, uses, benefits, status, affiliation, connection, or qualities that it or that Cox did not have.

The fourth subpart asked the jury whether Cox represented "that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law." *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(12). As has been previously addressed, Cox did not personally make representations to consumers. The State again contends that Cox should be held personally liable for allowing TaxMasters employees to make misrepresentations. Because the evidence does not establish that Cox personally made or directed any representations that an agreement would confer or involve rights, remedies, or obligations which it does not have or which are prohibited by law, there is no evidence to support this jury finding. *See Miller*, 90 S.W.3d at 718; *Leyendecker & Assocs.*, 683 S.W.2d at 375.

The fifth subpart asked the jury whether Cox advertised "goods or services with the intent not to sell them as advertised." *See* TEX. BUS. & COM. CODE ANN. § 17.46(b)(9). There is no evidence that Cox advertised or sold his personal services to any consumer. Rather, the evidence establishes that TaxMasters advertised the sale of tax resolution services and that it utilized Cox in those advertisements. Therefore, Cox cannot be held personally liable for advertising TaxMasters's services with the intent not to sell them as advertised when he was not the advertising entity.[6]

The State's approach to the jury questions relating to DTPA "laundry list" violations is to focus on three particular statements made by Cox personally in

---

[6] However, as discussed below, even if Cox can be held personally liable for representations he made in advertising for TaxMasters, the State failed to meet its burden to show that the representations made by Cox in these advertisements were false, misleading, or deceptive.

advertisements for TaxMasters. Those statements are that TaxMasters will "solve your tax problems," has "former IRS agents and tax professionals" to assist the consumer, and settles IRS debts for "pennies on the dollar." None of these statements were proven to be false, misleading, or deceptive on the part of Cox. The State contends that Cox and TaxMasters never performed any sort of evaluation of the tax resolution services that TaxMasters provided to consumers to determine whether TaxMasters actually solved consumer's tax problems or settled their IRS debts for pennies on the dollar. However, such an argument attempts to shift the burden to Cox to negate that he engaged in false, misleading, or deceptive actions. *See State v. Vavro*, 259 S.W.3d 377, 382 (Tex. App.—Dallas 2008, no pet.); *Rayford v. State*, 16 S.W.3d 203, 211 (Tex. App.—Dallas 2000, pet. denied) (op. on reh'g). In fact, in its brief, the State argues that the "pennies on the dollar" claim was "wholly unsubstantiated" and, therefore, provides a sufficient basis for the jury's findings. We disagree. An unsubstantiated claim is not necessarily a false, misleading, or deceptive claim. As to the State's argument that the representation that "former IRS agents and tax professionals" are available to assist consumers is false, misleading, or deceptive, the evidence established that TaxMasters actually employed former IRS agents and tax professionals. The State again attempts to shift the burden to Cox by arguing that Cox failed to prove how often consumers were able to consult directly with the former IRS agents and tax professionals employed by TaxMasters. *See Vavro*, 259 S.W.3d at 382; *Rayford*, 16 S.W.3d at 211. Ultimately, the State failed to meet its burden of proof to show that the statements of Cox were false, misleading, or deceptive.

Our review of the record reveals that there was no evidence to support the jury's findings regarding Cox's violations of the laundry list of the DTPA. As with the first jury

13

question, we conclude that there is no evidence to support the jury's answer to the third jury question.

The fourth, fifth, and sixth jury questions depend on the jury having made an affirmative finding on either the second or third jury questions. While the jury made affirmative findings on both of these questions, we have concluded that there was no evidence to support the jury's affirmative answers to either of these questions as they relate to Cox individually. As such, the jury should not have answered the fourth, fifth, or sixth jury question.

Finally, the seventh jury question depended on the assessment of a civil penalty against the defendants on question six. Since we have determined that the jury should not have answered jury question six as to Cox, the jury should not have answered that part of jury question number seven pertaining to Cox either.

Having determined that there was no evidence to support the jury's findings on any of the jury questions submitted to it, the trial court erred by entering judgment against Cox individually, and in submitting these issues to the jury over Cox's objection. As such, we reverse the trial court's judgment and render judgment finding that Cox is not personally liable for any DTPA violations of TaxMasters.

Remaining Issues

Because there was no evidence to support the affirmative findings of liability against Cox individually, we will sustain Cox's first and second issues. Because we sustain Cox's first two issues, we need not address his third, fourth, or fifth issues.

These issues, if sustained, would not entitle Cox to any more relief than he will be afforded under his first two issues.

To be entitled to a permanent injunction under the DTPA, the State had to show that Cox violated the DTPA, and that the issuance of the injunction is in the public interest. *See* TEX. BUS. & COM. CODE ANN. § 17.47(a) (West 2011). Because we have reversed the finding that Cox violated the DTPA, we must also reverse the trial court's imposition of a permanent injunction against him personally.

Finally, the State is entitled to recover reasonable attorney's fees and court costs in cases in which the State is entitled to recover civil penalties or damages. *See* TEX. GOV'T CODE ANN. § 402.006(c) (West 2013). However, because we have reversed the award of civil penalties, we must also reverse the award of attorney's fees against Cox.

Conclusion

For the foregoing reasons, we reverse those portions of the judgment of the trial court relating to Cox. We render judgment denying any recovery of restitution, civil penalties, or attorney's fees against Cox individually.


Mackey K. Hancock
Justice