ACCEPTED
04-14-00811-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
6/30/2015 10:41:29 AM
KEITH HOTTLE
CLERK

# 04-14-00811-CV

IN THE COURT OF APPEALS
FOURTH DISTRICT
SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

06/30/2015 10:41:29 AM

KEITH E. HOTTLE
Clerk

RANDY COLEMAN
AND JIM COLEMAN COMPANY,

*Appellants*

V.

RALPH DEAN,

*Appellee*

On Appeal from Cause No. 11-04-49987-CV
In the 79th Judicial District Court, Jim Wells County, Texas
The Hon. Richard C. Terrell, Presiding Judge

# APPELLEE'S BRIEF

Charles C. Webb, Jr.
Parker S. Webb
WEBB CASON, PC
710 North Mesquite Street
Corpus Christi, Texas 78401-2312
TEL: 361.887.1031
FAX: 361.887.0903
EMAIL: charlie@wcctxlaw.com
EMAIL: parker@wcctxlaw.com

Frank Weathered
State Bar No. 20998600
DUNN, WEATHERED, COFFEY,
RIVERA & KASPERITIS, P.C.
611 South Upper Broadway
Corpus Christi, Texas 78401
TEL: 361.883.1594
FAX: 361.883.1599
EMAIL: frank@weatheredlaw.com

**ATTORNEYS FOR APPELLEE**

**ORAL ARGUMENT REQUESTED**

**TABLE OF CONTENTS**

PAGE

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . vii

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I.    Sufficiency of the Evidence to Support Liability under the DTPA for Actual and Additional Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A. Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      B. Standard of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      C. Laundry List Violations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

            1. Source, sponsorship, approval . . . ... . . . . . . . . . . . . . . . . . . 10

            2. Characteristics, ingredients, uses, benefits, or quantities . . . . . . . . . 14

            3. Rights, remedies, or obligations.. . . . . . . . . . . . . . . . . . . . . . 14

            4. Failure to disclose. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            5. Jim Coleman Company's Relationship to the Transaction was Sufficient to Impose DTPA Liability on that Defendant. . . . . . . . . . . 15

      D. The Violations were a Producing Cause of Economic Damages. . . . . . . 17

    E. Appellants Knowingly Engaged in DTPA Violations.. . . . . . . . . . . . . 18

II.    Attorney Fees.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.   The Judgment does not Award Treble (or Double) Recovery. . . . . . . . . . . 22

Relief Requested. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

RULE 9.4(i)(3) CERTIFICATION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

# INDEX OF AUTHORITIES

PAGE

## CASES

*Basic Energy Serv., Inc. v. D-S-B Properties, Inc.,*
367 S.W.3d 254, 270 (Tex. App.—Tyler 2011, no pet.). . . . . . . . . . . . . . . . . . . 16

*Century 21 Real Estate Corp. v. Hometown Real Estate Co.,*
890 S.W.2d 118, 128 (Tex. App.—Texarkana 1994, writ denied).. . . . . . . . . . . 18

*City of Keller v. Wilson,*
168 S.W.3d 802, 827 (Tex. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Cox v. State,*
448 S.W.3d 497, 505 (Tex. App.—Amarillo 2014, pet. pending). . . . . . . . . . . . 10

*Cullins v. Foster,*
171 S.W.3d 521, 535-36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).. . 20

*Ford Motor Co. v. Ledesma,*
242 S.W.3d 32, 46 (Tex. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Fort Worth Elevators v. Russell,*
70 S.W.2d 397, 406 (Tex. 1934). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Green Int'l, Inc. v. Solis,*
951 S.W.2d 384, 389 (Tex. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Hedley Feedlot, Inc. v. Weatherly Trust,*
855 S.W.2d 826, 837 (Tex. App.—Amarillo 1993, pet. denied). . . . . . . . . . . . . 10

*Hennessey v. Vanguard Ins. Co.,*
895 S.W.2d 794, 802-03 (Tex. App.—Amarillo 1995, writ denied) .. . . . . 6, 13, 15

*Hruska v. First State Bank,*
747 S.W.2d 783, 785 (Tex. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*In re Johnson,*
340 S.W.3d 769, 775 (Tex. App.—San Antonio 2011, pet. denied). . . . . . . . . . . 7

*K.C. Roofing Co., Inc. v. Abundis,*
940 S.W.2d 375, 377 (Tex. App.—San Antonio 1997, writ denied). . . . . . . . . . . 18

*Melody Homes Mfg. Co. v. Barnes,*
741 S.W.2d 349, 351 (Tex. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Siegler v. Williams,*
658 S.W.2d 236, 240-41 (Tex. App.—Houston [1st Dist.] 1983, no writ). . . . . . 18

*Smith v. Herco, Inc.,*
900 S.W.2d 852, 859 (Tex. App.—Corpus Christi 1995, writ denied). . . . . . . . . 15

*Spillman v. Self Serve Fixture Co., Inc.,*
693 S.W.2d 656 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). . . . . . . . . . . . . . . . 22

*Todd v. Perry Homes,*
156 S.W.3d 919, 922 (Tex. App.—Dallas 2005, no pet.). . . . . . . . . . . . . . . . . . 16

*Tony Gullo Motors I, L.P. v. Chapa,*
212 S.W.3d 299, 311 (Tex. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 21

*Treasure City v. Strange,*
620 S.W.2d 811, 814 (Tex. Civ. App.—Dallas 1981, no writ). . . . . . . . . . . . . . 16

*U.S. Fire Ins. Co. v. Millard,*
847 S.W.2d 668, 672 (Tex. App.—Houston [1st Dist.] 1993, no writ). . . . . . . . 6, 15

STATUTES

TEX. BUS. & COMM. CODE § 17.45(9). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TEX. BUS. & COMM. CODE § 17.46(b)(2, 3, 5, 7, 12, 24). . . . . . . . . . . . . . . . . . . 10

TEX. BUS. & COMM. CODE § 17.50(a)(1)(A, B). . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

TEX. BUS. & COMM. CODE § 17.50(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**RULES**

TEX. R. CIV. P. 324(b)(2).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## STATEMENT OF THE CASE

This is a DTPA case involving a concrete modular home that was never delivered as promised, despite consumer Ralph Dean's down payment of more than half the purchase price. CR 293.[1] The trial court rendered a post-answer default judgment against defendant Randy Coleman; an instructed verdict against defendant Living Modular; and a judgment based on a jury verdict against defendant Jim Coleman Company. 4 RR 12-13, 22-24, 31, 35-36; CR 375. Living Modular has not appealed; Randy Coleman has brought a restricted appeal; and Jim Coleman Company has filed an ordinary appeal. CR 455, 459. Randy Coleman and Jim Coleman Company have filed separate briefs, but their issues are the same. Therefore, plaintiff/appellee Ralph Dean is responding to both appeals with one brief. All the parties will be referred to herein individually by name (Randy Coleman and Jim Coleman Company will also sometimes be collectively referred to as Appellants).

## STATEMENT REGARDING ORAL ARGUMENT

Appellants have requested oral argument but have not explained why. Dean submits oral argument is unnecessary because the record is short and simple, and applicable law is well settled. Dean is therefore requesting oral argument only "conditionally" in the event the Court grants Appellants' request.

---

[1]Appellee shall cite the Clerk's Record as "CR," the Reporter's Record as "RR," and Plaintiff's Exhibits as "PX." There are no defense exhibits.

## ISSUES PRESENTED

In addition to the issues stated in Appellants' briefs, Dean presents the following additional issues:

1.    Have the Appellants waived their factual sufficiency challenges by failing to include the point in a motion for new trial?

2.    Has Jim Coleman Company waived its segregation argument regarding attorney's fees by failing to object to the testimony on attorney's fees or to the charge of the court?

3.    Has Jim Coleman Company waived its challenge to the quality of the evidence on attorney's fees by failing to object to the testimony on that ground or otherwise raise the issue in the trial court?

## STATEMENT OF FACTS

While at a hunting show in Houston, Dean and his wife Alisa, who reside in Sandia, Texas, passed a booth marketing concrete modular homes. 3 RR 16. The booth had a Living Modular sign, but Randy Coleman, who was present, handed Dean a Jim Coleman Company business card with Randy's name on it and told Dean he was an executive with Jim Coleman Company. PX-1; 3 RR 19- 20, 22, 69-70. Also present were Wayne Coleman, Randy's brother, who likewise said he was an executive with Jim Coleman Company, and Bob Oaks, who appeared to be helping the Coleman brothers with sales. 3 RR 16-21.

Dean learned that the homes were manufactured in Mexico, then trucked to their intended sites. 3 RR 22. After visiting with Randy and Wayne Coleman, Dean returned home and, following discussions with Alisa, eventually decided to look further into purchasing a modular home to place on some recreational property they own near Premont, Texas. 3 RR 16-17.

Dean returned to Houston on several occasions to negotiate the purchase of a modular home. 3 RR 22-24, 30-31, 33, 38, 41-43, 45-46, 71, 88. *See* PX-3, 4 (sales brochures). Each time, he met with Jim Coleman Company employees at Jim Coleman Company facilities. *Id.* These facilities were located on Jim Coleman Company premises and contained Jim Coleman Company offices. *Id.* Jim Coleman

1

Company employees included Randy Coleman, who said he was a vice-president and part owner of Jim Coleman Company; Wayne Coleman, Randy's brother who also said he was an executive (vice-president) with Jim Coleman Company; and Bob Oaks. 3 RR 21, 26, 40-41, 55-57, 82, 84; PX-4. *See* PX-10 (Jim Coleman Company website confirming Randy Coleman's position and responsibilities with Jim Coleman Company). Randy Coleman told Dean he maintained an office at these facilities. 3 RR 26, 40. *See* PX-1 (business card). Oaks was reachable through the Jim Coleman Company switchboard.

During the on-going negotiations, the Jim Coleman Company employees represented to Dean that Jim Coleman Company could manufacture and sell awnings for the modular home. 3 RR 41-42. *See* PX 2 (brochure containing pictures of awnings). This was described as a "modular option." *Id.* Jim Coleman Company employees, including Randy Coleman, offered to Dean to make such awnings. 3 RR 41-42.

At no time, did anyone tell Dean there was no affiliation between Jim Coleman Company and Living Modular. 3 RR 42. To the contrary, Jim Coleman Company caused Dean to believe that Living Modular was affiliated with and financially supported by Jim Coleman Company and that he would essentially be purchasing the modular home from Jim Coleman Company. 3 RR 42, 46-47, 56-58, 78, 85-90.

2

Based upon the confusion created and representations made regarding the modular home, together with the failure to disclose the lack of any relationship between Jim Coleman Company and Living Modular, Dean purchased a concrete modular home for $63,700 in October 2009, making a down payment of $30,000 for delivery by Thanksgiving 2009. PX-6 (purchase order), 7 (initial deposit). Although "Living Modular" was printed on the purchase order, it was completed by Bob Oaks, a Jim Coleman Company employee with an office at Jim Coleman Company in Houston. PX-6; 3 RR 46. Dean was even given a Jim Coleman Company pen with which to sign the purchase order. 3 RR 58. A couple of weeks later, Dean paid an additional $3,000 at Randy Coleman's request. PX-8. He also incurred out-of-pocket expenses of $14,659.38. PX-9.

It was also represented to Dean by Jim Coleman Company employees that a Jim Coleman Company employee, at Randy Coleman's direction, could custom design Dean's modular home using a Jim Coleman Company computer program located at Jim Coleman Company's plant. 3 RR 34, 42-43. Following the purchase order, the design for the modular home purchased by Dean was in fact customized by a Jim Coleman Company employee using a Jim Coleman Company computer program at the Jim Coleman Company plant. 3 RR 77, 86-87; PX-5.

The modular home was never delivered. 3 RR 36-37, 49, 53-54. Despite repeated attempts by Dean to ascertain the status of his purchase order, followed by attempts to learn why the home was never delivered, Dean was never given a straight answer. Eventually, Randy Coleman, Wayne Coleman, and Bob Oaks quit returning Dean's calls. 3 RR 36-37, 49, 53-54.

On the first morning of trial, Jim Coleman Company's attorney suggested to the jury for the first time that delivery of the home was disrupted by drug cartels in Mexico. 2 RR 65. No evidence was ever offered to support this claim, and no one had ever given Dean that as a reason. 3 RR 37. In fact, Dean specifically asked whether there was risk entailed in the home being manufactured in Mexico and he was assured there was not. *Id.* If he had been told otherwise, he would not have purchased the home. 3 RR 41.

## SUMMARY OF THE ARGUMENT

The evidence is sufficient to support the Jury's findings of DTPA liability and damages as to Jim Coleman Company (and the trial court's corresponding findings against Randy Coleman). Among other violations, both Appellants, individually and through vice-principals, knowingly violated the DTPA by causing confusion as to, and misrepresenting, the source, sponsorship, approval, certification, affiliation, connection, and status of Living Modular and the modular home in question, as well

4

as Living Modular's and the modular home's association with, or certification by, Jim Coleman Company. This was a producing cause of both benefit-of-the-bargain and out-of-pocket damages incurred by Dean. The DTPA claims were distinct and separate from any breach of contract claims, and the DTPA violations were independent of any contractual relationship between the parties.

Jim Coleman Company's arguments that Dean failed to segregate his attorney fees and that the evidence of attorney fees is conclusory were waived at trial and are being raised for the first time on appeal. Even if those arguments had not been waived, moreover, there was no duty to segregate attorney fees and the evidence of fees is not conclusory.

The final judgment does not award double or treble relief. It is plainly a joint and several judgment, and Dean disavows any right to recover his damages more than once.

I.      **Sufficiency of the Evidence to Support Liability under the DTPA for Actual and Additional Damages**

A.      **Introduction**

Appellants' chief complaint is the sufficiency of the evidence to support liability and damages for DTPA violations (Jim Coleman Company's second and third issues, and Randy Coleman's first and second issues).[2]

In order to establish liability under the DTPA, Dean had to show that (1) Jim Coleman Company and Randy Coleman violated a specific provision of the Act; (2) the violation was a producing cause of his injury; and (3) he relied on the false, misleading or deceptive act or practice to his detriment. TEX. BUS. & COMM. CODE § 17.50(a)(1)(A, B). In that event, he is entitled to recover his economic damages, court costs, and reasonable and necessary attorney's fees. *Id.* at §§ 17.50(b)(1), (d). Upon a "knowingly" finding, he may also recover "additional damages" of not more than three times the amount of economic damages. *Id.* at § 17.50(b)(1).

---

[2]In their briefing, both Appellants make reference more than once to Dean's alternate claim for breach of contract. In addition to the DTPA claims, an instructed verdict was also granted against Living Modular, and a post-answer default judgment against Randy Coleman, for breach of contract. 4 RR 12-13, 22-24, 31. As to Jim Coleman Company, however, the trial court refused to submit breach of contract to the jury, and that is not what the judgment against Jim Coleman Company is based on. 4 RR 38-39; CR 363-66, 374. A DTPA claim is separate and distinct from an action on an underlying contract, and is not dependent on any contractual relationship between the parties. *E.g. Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 802-03 (Tex. App.—Amarillo 1995, writ denied) (citing *U.S. Fire Ins. Co. v. Millard,* 847 S.W.2d 668, 672 (Tex. App.—Houston [1ˢᵗ Dist.] 1993, no writ)). To the extent Dean discusses breach of contract herein, therefore, it only applies to Randy Coleman.

## B.	Standard of Review

The Court's standard of review is well settled. When reviewing a legal sufficiency or "no evidence" challenge, the Court determines "whether the evidence at trial would enable reasonable and fair minded people to reach the verdict under review." *In re Johnson,* 340 S.W.3d 769, 775 (Tex. App.—San Antonio 2011, pet. denied) (quoting *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005)). The Court views the evidence in the light most favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Id.* at 775-76. Appellate courts will sustain a legal sufficiency or "no evidence" challenge only when: (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; © the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *Id.* at 776.

By contrast, when reviewing a factual sufficiency challenge, the Court considers all the evidence supporting and contradicting the finding. *Id.* The Court will set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly unjust. *Id.* "Jurors are the sole judges of the credibility of the witnesses and the weight to give their

7

testimony." *Id.* (quoting *City of Keller,* 168 S.W.3d at 819)). "They may choose to believe one witness and disbelieve another." *Id.* "Reviewing courts cannot impose their own opinions to the contrary." *Id.* "Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved evidence contrary to it." *Id.*[3]

The only witness to testify to liability and damages was Ralph Dean, and the only documentary evidence admitted was that of the plaintiff. Randy Coleman was of course not present at trial. As a sanction, in turn, Living Modular (who was unrepresented by an attorney at trial and barred by law from representing itself *pro se*) and Jim Coleman Company were not allowed to present any witnesses, a ruling Jim Coleman Company has not challenged on appeal. *See* 2 RR 9-11, 17, 19, 22-23. In reviewing the sufficiency of the evidence to support the jury's liability and damage findings, therefore, the Court is limited to Dean's testimony and the plaintiff's exhibits. Not surprisingly, all of this evidence is favorable to the jury's verdict.

---

[3]Neither Randy Coleman nor Jim Coleman Company filed a motion for new trial that included a factual sufficiency point or requested a new trial (post-verdict, Randy Coleman filed nothing, while Jim Coleman Company filed only a motion for judgment notwithstanding the verdict seeking rendition of a take nothing judgment, CR 379). Therefore, they have waived any factual sufficiency challenge. TEX. R. CIV. P. 324(b)(2). Dean is only discussing the standard of review for factual sufficiency out of an abundance of caution in the unlikely event the Court determines there was no waiver.

## C. Laundry List Violations

The jury found that Jim Coleman Company committed one or more of the following "laundry list" infractions contained in section 17.46(b) of the DTPA (and the trial court made the same findings in default against Randy Coleman):

    (a) causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

    (b) causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

    (c) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have;

    (d) representing that a person has a sponsorship, approval, status, affiliation, or connection which he does not have;

    (e) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve;

    (f) failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

CR 362. *See* TEX. BUS. & COMM. CODE § 17.46(b)(2, 3, 5, 7, 12, 24). In finding the laundry list violations by Jim Coleman Company, the jury was mindful that, as instructed by the trial court:

> Jim Coleman Company can only act or fail to perform a required act through the action of an agent, servant or employee of Jim Coleman Company . . . . Liability for a corporation cannot be created by any act or failure to perform a required act by any person who is not an agent, servant or employee.
>
> For the Jim Coleman Company to be liable for damages caused by an Agent, Servant or Employee, such action or omission to act must be within the course of the agency or employment of the Agent, Servant or Employee.

CR 361. *See e.g. Hedley Feedlot, Inc. v. Weatherly Trust,* 855 S.W.2d 826, 837 (Tex. App.—Amarillo 1993, pet. denied). Under the law, Jim Coleman Company is liable for an agent's DTPA violations within the scope of his agency even if Jim Coleman Company had no knowledge of the violations. *Id.* The evidence is more than ample to support the jury's finding that Jim Coleman Company, acting through its agents, including vice-principals, violated the DTPA.

### 1.     Source, sponsorship, approval . . . .

Sections 17.46(b)(2, 3 & 5) of the Act are "primarily concerned with deception in the origin or endorsement [or affiliation] of a good or service [or person]." *See Cox v. State,* 448 S.W.3d 497, 505 (Tex. App.—Amarillo 2014, pet. pending) (construing

subdivision (b)(2)). In the case at bar, the evidence is practically conclusive (there being nothing to contradict it) that Jim Coleman company employees Randy Coleman, Wayne Coleman, and Bob Oaks caused confusion as to, or misrepresented, the source, sponsorship, approval, certification, affiliation, connection, and status of Living Modular and the modular home in question, as well as Living Modular's and the modular home's association with, or certification by, Jim Coleman Company.

While the hunting show booth which first grabbed Dean's attention had a Living Modular sign, Randy Coleman handed Dean a Jim Coleman Company business card with Randy's name on it (not a Living Modular card) and told Dean he was an executive with Jim Coleman Company, not Living Modular. PX-1; 3 RR 19-20, 22, 69-70. Wayne Coleman likewise said he was an executive with Jim Coleman Company, not Living Modular. 3 RR 16-21.

Consistent with this, the several occasions when Dean returned to Houston to negotiate on a modular home took him each time to meet with Jim Coleman Company employees at Jim Coleman Company facilities. *Id.* These facilities were located on Jim Coleman Company premises and contained Jim Coleman Company offices. *Id.* The Jim Coleman Company employees included Randy Coleman, who said he was a vice-president and part owner of Jim Coleman Company; Wayne Coleman, who also said he was an executive (vice-president) with Jim Coleman

11

Company; and Bob Oaks, who helped out with sales at Jim Coleman Company. 3 RR 21, 26, 40-41, 55-57, 82, 84; PX-4. *See* PX-10 (Jim Coleman Company website confirming Randy Coleman's position and responsibilities with Jim Coleman Company). Randy Coleman told Dean he maintained an office at these facilities. 3 RR 26, 40. *See* PX-1 (business card). Oaks was reachable through the Jim Coleman Company switchboard.

During these on-going negotiations, the Jim Coleman Company employees represented to Dean that *Jim Coleman Company* (not Living Modular) could manufacture and sell awnings for the modular home. 3 RR 41-42. *See* PX 2 (brochure containing pictures of awnings). This was described as a "modular option." *Id.* Jim Coleman Company employees, including Randy Coleman, offered to Dean to make such awnings. 3 RR 41-42.

All of this caused Dean to believe that he would essentially be purchasing the modular home from Jim Coleman Company, with which Living Modular was affiliated and by which Living Modular was financially supported. 3 RR 42, 46-47, 56-58, 78, 85-90. Hence, there was confusion and misrepresentation as to the source, sponsorship, approval, certification, affiliation, connection, and status of Living Modular and the modular home in question, as well as their association with, or certification by, Jim Coleman Company.

12

The jury's verdict and the trial court's judgment in the case at bar reflect the rule that the DTPA only requires acquiescence to false representations of or confusion caused by another regarding the defendant. *Hennessey v. Vanguard Ins. Co.,* 895 S.W.2d 794, 803 (Tex. App.—Amarillo 1995, pet. denied). In *Hennessey*, the court of appeals held that the consumer had presented sufficient evidence of a (b)(5) laundry list violation to withstand motion for summary judgment by showing that the defendant company allowed its logo to appear on an unaffiliated company's contract with the consumer. Likewise in the case at bar, Jim Coleman Company allowed its own vice-principals, Randy and Wayne Coleman, to operate Living Modular on the business premises of Jim Coleman Company; to use Jim Coleman Company employees, such as Bob Oaks, to help orchestrate the sale; and to represent Jim Coleman Company's availability and expertise to customize the modular home with custom awnings and design modifications. That Randy and Wayne Coleman were family members and vice-principals is particularly probative. *Hennessey,* 895 S.W.2d at 804 ("This is particularly true when there is a close relationship between the party making the representation and the party whose sponsorship or approval is being asserted.").

## 2. Characteristics, ingredients, uses, benefits, or quantities

Likewise, these Jim Coleman Company employees misrepresented the characteristics, ingredients, uses, benefits, or quantities of the modular home ordered by Dean. For instance, they misrepresented that the home would be transported from Mexico, delivered to the pad site laid out by Ralph Dean near Premont, and available for the Dean family's use and enjoyment. It was never delivered. The Deans have never even seen in person the home they purchased, let alone enjoyed its use.

## 3. Rights, remedies, or obligations

These Jim Coleman Company employees also misrepresented that an agreement (the purchase order, as supplemented by the various verbal understandings between the parties) conferred or involved rights, remedies, or obligations which it did not have or involve. It was represented, for instance, that the purchase order gave Dean the right to delivery of a fully fabricated modular home, as customized by a Jim Coleman Company employee using a computer program at Jim Coleman company's plant in Houston. This of course never happened.

## 4. Failure to disclose

The evidence shows that Jim Coleman Company employees failed to disclose information concerning Living Modular which was known to them at the time Dean entered into the transaction and that such failure was intended to induce Dean into the

transaction. Specifically, Jim Coleman Company employees failed to disclose to Dean, at any time, that Living Modular and Jim Coleman Company were not affiliated and that Jim Coleman Company was not going to support, sponsor, or back up in any way the manufacture, delivery, or end-quality of the modular home ordered by him. They also failed to disclose the risks in fabricating modular homes in Mexico.[4]

### 5. Jim Coleman Company's Relationship to the Transaction was Sufficient to Impose DTPA Liability on that Defendant

A DTPA claim is separate and distinct from an action on an underlying contract, and is not dependent on any contractual relationship between the parties. *E.g. Hennessey*, 895 S.W.2d at 802-03 (citing *U.S. Fire Ins. Co. v. Millard,* 847 S.W.2d 668, 672 (Tex. App.—Houston [1ˢᵗ Dist.] 1993, no writ)).

To impose DTPA liability on Jim Coleman Company, therefore, Dean only needed to prove that (1) he sought goods or services by purchase or lease; (2) the goods or services formed the basis for his complaint; and (3) Jim Coleman Company

---

[4]Other than failure to disclose, intent is not relevant in this case. Appellants spend time arguing that the evidence is insufficient to show that they intended to not honor the agreement to fabricate and deliver the modular home at the time the agreement was made. Intent "has never been an element of a DTPA 'laundry list' claim unless the specific provision requires intent." *Smith v. Herco, Inc.,* 900 S.W.2d 852, 859 (Tex. App.—Corpus Christi 1995, writ denied). Other than a failure to disclose claim, the DTPA requires a showing of intent only where the consumer is seeking recovery of treble (additional) damages based on a recovery of both economic damages *and mental anguish*, taken together. TEX. BUS. & COMM. CODE § 17.50(b)(1). Here, Dean did not recover mental anguish damages, therefore he neither sought nor recovered any additional damages that take mental anguish into account.

15

(a) violated one or more of the laundry list practices in connection with the transaction, or (b) sought a benefit from the transaction. *Melody Homes Mfg. Co. v. Barnes,* 741 S.W.2d 349, 351 (Tex. 1987) (elements 1 & 2); *Basic Energy Serv., Inc. v. D-S-B Properties, Inc.,* 367 S.W.3d 254, 270 (Tex. App.—Tyler 2011, no pet.) (element 3: "[P]laintiff must show its transaction was connected with the defendant through (1) a representation by the defendant that reached the plaintiff or (2) a benefit from the plaintiff's transaction that reached the defendant."); *Todd v. Perry Homes,* 156 S.W.3d 919, 922 (Tex. App.—Dallas 2005, no pet.) (element 3: "Where there is no contractual privity between the defendant and the consumer, 'the connection can be demonstrated by a representation that reaches the consumer or by benefit from the second transaction to the initial seller.").

It is undisputed that Randy Coleman, Wayne Coleman and Bob Oaks were all employees of Jim Coleman Company. Jim Coleman Company's employment of Randy and Wayne Coleman as executives was admitted by vice-principals of Jim Coleman company, namely Randy and Wayne Coleman, both of whom were vice-presidents of Jim Coleman Company. *See generally* *Treasure City v. Strange,* 620 S.W.2d 811, 814 (Tex. Civ. App.—Dallas 1981, no writ) (citing *Fort Worth Elevators v. Russell,* 70 S.W.2d 397, 406 (Tex. 1934)) (corporate officers are considered vice-principals). It was these vice-principals of Jim Coleman Company who not only

acquiesced in the appearance that Jim Coleman Company's was affiliated with and a sponsor of Living Modular, they actively fostered the appearance, and therefore the confusion.

### D. The Violations were a Producing Cause of Economic Damages

The jury was properly instructed that producing cause is "a cause that was a substantial factor in bringing about the damages, if any, and without which the damages would not have occurred. There may be more than one producing cause." CR 362. *See generally* Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 46 (Tex. 2007).

The evidence is overwhelming that the enumerated violations of the DTPA by Jim Coleman Company employees, including vice-principals Randy and Wayne Coleman, were a producing cause of economic damages to Dean. He and his wife Alisa paid out $33,000, and spent another $14,659.38 in out-of-pocket expenses, for a modular home that was never delivered. Dean testified unequivocally that it was the confusion and misrepresentations, coupled with his ignorance as an innocent consumer, that led him to place $33,000 down on the modular home and incur the related out-of-pocket expenses. But for the DTPA violations, the transaction never would have occurred, and the measures of the damages suffered are classic benefit-of-the-bargain and out-of-pocket.[5]

---

[5]As to damages, Appellants assert in their briefs that the amount awarded exceeds the amount pled. *Compare* CR 294-95 (total of $39,204 pled) *with* CR 364, 375 (total of $47,659.38 awarded). While Dean did not seek or obtain a post-verdict trial amendment to conform the pleadings to the

## E. Appellants Knowingly Engaged in DTPA Violations

Finally, Appellants challenge the sufficiency of the evidence to support the jury's finding that Jim Coleman Company knowingly engaged in violations of the DTPA's laundry list (and the trial court's default finding to the same effect against Randy Coleman). The evidence, however, is sufficient.

Pursuant to the Act, the jury was instructed that a person acts "knowingly" whenever he has "actual awareness of the falsity, unfairness, or deceptiveness of the act or practice. Actual awareness may be inferred if objective manifestations indicate that a person acted with actual awareness." CR 363. *See* TEX. BUS. & COMM. CODE § 17.45(9). There was no objection to this instruction.

Actual awareness may be inferred from the circumstances. *E.g. K.C. Roofing Co., Inc. v. Abundis,* 940 S.W.2d 375, 377 (Tex. App.—San Antonio 1997, writ denied). In essence, to act "knowingly" is the converse of acting inadvertently. *See Century 21 Real Estate Corp. v. Hometown Real Estate Co.,* 890 S.W.2d 118, 128 (Tex. App.—Texarkana 1994, writ denied).

In the case at bar, Jim Coleman Company's and Randy Coleman's actual awareness of its DTPA infractions may be inferred from the circumstances. Randy Coleman's awareness of what he was doing speaks for itself. As for Jim Coleman

---

verdict, Appellants never objected, either by motion to limit the judgment or motion for new trial. Therefore, any challenge to the amount awarded has been waived. *E.g. Siegler v. Williams,* 658 S.W.2d 236, 240-41 (Tex. App.—Houston [1st Dist.] 1983, no writ).

18

Company, two of the individuals violating the DTPA, Randy and Wayne Coleman, were its vice-principals. Their knowledge was imputed to their principal. Living Modular's operations were conducted on the premises of Jim Coleman Company in full view of the world. The offices were the same; the switchboard was the same; and the custom designers were the same. If they had different hats, they kept them on the hat rack and did not wear them when dealing with the public.

## II. Attorney Fees

Appellants' assault on the trial court's award of attorney fees is two-fold: (1) there was a failure to segregate between fees incurred to prosecute breach of contract and the DTPA, and between fees incurred for prosecuting the three different defendants, and (2) the testimony of attorney fees was supposedly "conclusory." Regarding segregation, that argument was waived at trial, and in any event, there was no duty to segregate. Regarding the quality of the testimony itself, that argument has been waived as well, and in any event, there was nothing "conclusory" about the testimony.

Two witnesses testified concerning attorney fees. The first was Charles Webb, Mr. Dean's attorney. The second was Fred Dreiling, a Corpus Christi trial attorney who was called by Dean as an expert witness. Mr. Webb testified by narrative that a reasonable hourly rate for his time was $250, and $120 for his associate (and son),

19

Parker Webb. 3 RR 93-94. According to Mr. Webb, he had 92 hours in the case, while his son had 33. *Id.* In turn, Mr. Dreiling testified that a reasonable hourly rate for the DTPA case was $250; the range of reasonable fees for preparing and trying the case was $25,000-$50,000; and for an appeal, $15,000-$25,000. 3 RR 108,110-12. Dreiling also testified that the fees would be the same for the breach of contract claim. 3 RR 113. The jury awarded $26,900 for attorney fees through trial; $15,000 for an appeal to the court of appeals; and $10,000 for proceedings in the supreme court. CR 366.

Appellants' segregation argument has been waived. Jim Coleman Company never objected to any of the testimony regarding attorney's fees on the ground of failure to segregate, nor was their any such objection to the charge. *See* 3 RR 92-95 (Webb's testimony); 3 RR107-14 (Dreiling's testimony); 4 RR 36-40 (objections to charge). Absent that, any error regarding failure to segregate is waived. *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 389 (Tex. 1997); *Hruska v. First State Bank,* 747 S.W.2d 783, 785 (Tex. 1988); *Cullins v. Foster,* 171 S.W.3d 521, 535-36 (Tex. App.—Houston [14th Dist.] 2005, pet. denied).

Even if the argument was not waived, it is groundless. The duty to segregate attorney's fees exists only where at least some of the fees incurred "relate solely to a claim for which such fees are unrecoverable." *Tony Gullo Motors I, L.P. v. Chapa,*

20

212 S.W.3d 299, 311 (Tex. 2006). Where the attorney's fees incurred advanced both a recoverable and a non-recoverable claim, there is no duty to segregate. *Id.* at 313-14. Here, the only two claims brought against the defendants were DTPA and breach of contract, both of which allow for the recovery of attorney's fees. No claims were brought which do not allow for attorney's fees. Moreover, Fred Dreiling testified that the fees incurred for breach of contract were the same as those incurred for the DTPA. There was no duty to segregate fees in this case.

Turning to the quality of the testimony on attorney fees, this too is an argument that has been waived. There was no objection to admissibility during the testimony of either Charles Webb or Fred Dreiling; the issue was not raised at the end of the trial through motion for directed verdict; it was not raised during objections to the charge; it was not raised in the motion for judgment notwithstanding the verdict; and it was not raised in a motion for new trial. The argument is being urged for the first time on appeal. It is not timely.

Moreover, the testimony at issue was not "conclusory." In fact, Jim Coleman Company actually lodged an objection during the testimony of Fred Dreiling that Mr. Dreiling's analysis of the *Arthur Andersen* factors was not relevant. 3 RR 109. Of course, the trial court overruled the objection. *Id.* It appears, however, that Jim

21

Coleman Company believed at trial that the testimony was becoming not too conclusory, but too detailed and particularized!

### III. The Judgment does not Award Treble (or Double) Recovery

Appellants argue that because the trial court's judgment awards identical sums of money against each of the three defendants, and does not employ the words "jointly and severally," it amounts to a treble recovery. Dean agrees with Appellants that the injury sued upon was single and indivisible, but there is nothing in the judgment to suggest that it is anything more than a joint and several judgment. If Dean successfully collects any sums from Jim Coleman Company, he will not have the right to then recover the same sums from Randy Coleman or Living Modular. The only reason the judgment makes the award more than once is that the nature of the liability of Randy Coleman (default) and Living Modular (instructed verdict) is distinct from the liability of Jim Coleman Company (jury verdict).

Appellants rely on *Spillman v. Self Serve Fixture Co., Inc.,* 693 S.W.2d 656 (Tex. App.—Dallas 1985, writ ref'd n.r.e.). The judgment in *Spillman*, however, is not quoted in the Fifth Court's opinion, and most importantly, the sums awarded there were not identical. There were two defendants. The award against one defendant was for an amount that was the subject of a guaranty, while the award against the other defendant was for that plus the balance remaining owed. In the case at bar, on

22

the other hand, the sums awarded are identical and it is obvious that the injury suffered, and the sums awarded for such, are single and indivisible. There is therefore no potential for double recovery, which Dean disavows.

## RELIEF REQUESTED

Appellee Ralph Dean prays that the Court affirm the trial court's judgment in all things. He prays for all other relief to which he may be entitled.

Respectfully submitted,

DUNN WEATHERED COFFEY
RIVERA & KASPERITIS, PC
611 South Upper Broadway
Corpus Christi, Texas 78401
TEL: 361.883.1594
FAX: 361.883.1599
EMAIL: frank@weatheredlaw.com

BY  */s/ Frank Weathered*
        Frank Weathered
        Texas State Bar No. 20998600

**ATTORNEY-IN-CHARGE FOR
APPELLEE RALPH DEAN**

23

*Of Counsel:*

Charles C. Webb, Jr.
Texas State Bar No. 21039500
Parker S. Webb
Texas State Bar No. 24085648
WEBB CASON, PC
710 North Mesquite Street
Corpus Christi, Texas 78401-2312
TEL: 361.887.1031
FAX: 361.887.0903
EMAIL: charlie@wcctxlaw.com
EMAIL: parker@wcctxlaw.com

J. Michael Guerra
Texas State Bar No. 08581310
LAW OFFICE OF J. MICHAEL GUERRA
1600 E. Main Street, Suite 227
P.O. Box 1968
Alice, Texas 78333
TEL: 361.668.7344
FAX: 361.664.1003
EMAIL: jmguerra14@gmail.com

## RULE 9.4(i)(3) CERTIFICATION

I certify that the foregoing document complies with the typeface requirement of Texas Rule of Appellate Procedure 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the word-count limitations of Texas Rule of Appellate Procedure 9.4(i) because it contains **5,609** words, excluding those portions exempted by Texas Rule of Appellate Procedure 9.4(i)(1).

/s/ *Frank Weathered*
Frank Weathered

24

## CERTIFICATE OF SERVICE

This is to certify that on **JUNE 30, 2015**, this document was electronically filed pursuant to TEX. R. CIV. P. 21(f)(1) and a true and correct copy was served on counsel of record listed below through the electronic filing manager if the email address is on file with the electronic filing manager, pursuant to TEX. R. CIV. P. 21a(a)(1). If the email address of any attorney listed below is not on file with the electronic filing manager, a true and correct copy of this document was served pursuant to TEX. R. CIV. P. 21a(a)(2).

/s/ *Frank Weathered*
Frank Weathered

Mr. Paul R. Lawrence
LAWRENCE & BACA, PLLC
2180 North Loop West, Suite 510
Houston, Texas 77018
FAX: 713.864.0179
EMAIL: prlawrence@lbandd.com
***Attorney for Appellants***