Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio




# OPINION

No. 04-10-00751-CV

Javier **SOLIS** and Maria Solis d/b/a J. Solis Maintenance and Welding Service,
Appellants

v.

## CITY OF LAREDO,
Appellee

From the 49th Judicial District Court, Webb County, Texas
Trial Court No. 2009CVF001270-D1
Honorable Jose A. López, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:    Catherine Stone, Chief Justice
Phylis J. Speedlin, Justice
Marialyn Barnard, Justice

Delivered and Filed:  September 21, 2011

AFFIRMED

This appeal of an order granting a plea to the jurisdiction arises from a lawsuit alleging

breach of contract and intentional tort claims against the City of Laredo.  Javier Solis and Maria

Solis d/b/a J. Solis Maintenance and Welding Service appeal the trial court's order granting the

City of Laredo's plea to the jurisdiction, contending the trial court erred in concluding that the

City retained its sovereign immunity because: (1) the City sued Solis for payment under a bid

bond; and (2) the parties had entered into a contract thereby waiving the City's immunity from suit. We affirm the trial court's order.

## BACKGROUND[1]

Solis submitted a bid to the City for a public works project. In his submission of the bid, Solis included a bid bond in the amount of 5% of Solis's bid. The bid bond listed Solis as principal and Acstar Insurance Company as surety. The bid bond was designed to ensure that Solis would promptly enter into a contract for the performance of the work if the City accepted Solis's bid.

In April of 2006, the City accepted Solis's bid in the amount of $1,644,759.00, but by letter dated May 1, 2006, Solis forfeited the project and declined to enter into the contract due to difficulty in obtaining the necessary bonds. On May 15, 2006, the City rescinded the award of the contract to Solis for failure to enter into the contract. Shortly thereafter, the City sent formal demand for payment on the bid bond in the amount of $80,396.95. In December of 2006, the City sued Solis and Acstar in cause number 2006CVF002054-D4 seeking payment on the bond. Although Solis initially filed counter-claims against the City for fraud, negligent misrepresentation, breach of good faith and fair dealing, and breach of contract, Solis later dropped his counter-claims against the City.

In July of 2009, Solis filed a separate lawsuit against the City in the underlying cause (number 2009CVF001270-D1), asserting claims for breach of contract, common law fraud, fraud by nondisclosure, and breach of fiduciary duty. After a hearing, the trial court granted the City's plea to the jurisdiction. Solis appeals.

---

[1] The factual recitations included in this section are based, in part, on the trial court's findings of fact.

## STANDARD OF REVIEW

A trial court's ruling on a plea to the jurisdiction is reviewed *de novo*. *City of Waco v. Lopez*, 259 S.W.3d 147, 150 (Tex. 2008). In reviewing the ruling, an appellate court must determine whether facts have been alleged that affirmatively demonstrate jurisdiction in the trial court. *Id*. The court must also consider evidence tending to negate the existence of jurisdictional facts when necessary to resolve the jurisdictional issues raised. *Id*. The court construes the pleadings liberally in favor of the plaintiff, and a fact question regarding jurisdiction precludes a trial court from granting a plea to the jurisdiction. *Id*.

## WAIVER OF IMMUNITY UNDER *REATA*

In his first issue, Solis asserts that the City is not immune from his intentional tort claims because the City waived its immunity by asserting an affirmative claim for relief against Solis in the prior lawsuit. In support of his assertion, Solis cites *Reata Const. Corp. v. City of Dallas*, 197 S.W.3d 371 (Tex. 2006). The City responds that the waiver found in *Reata* is inapplicable because the City did not seek any affirmative relief in the underlying cause. The City argues that its prior lawsuit involving the bid bond was a separate lawsuit, and the affirmative claims filed in the prior lawsuit have no effect on the City's immunity in the underlying cause.

In *Reata*, the City of Dallas issued a temporary license for the installation of fiber optic cable to Dynamic Cable Construction Corporation. 197 S.W.3d at 373. Dynamic subcontracted with Reata Construction Corporation to perform the drilling for the project. *Id*. Reata inadvertently drilled into a water main, flooding a nearby building. *Id*. The building owner sued Dynamic and Reata for negligence. *Id*. Reata filed a third-party claim against the City, alleging that the City negligently misidentified the water main's location. *Id*. The City intervened in the case, ultimately asserting negligence claims against Dynamic and Reata. *Id*. The City also filed

a plea to the jurisdiction asserting governmental immunity from suit. *Id*. The trial court denied the City's plea, and the court of appeals reversed, holding that the City's intervention did not result in a waiver of immunity. *Id*. at 374.

The Texas Supreme Court noted that courts generally defer to the Legislature to waive immunity. *Id*. at 375. This deference is based on the position that the absence of immunity may "hamper governmental functions requiring tax resources to be used for defending lawsuits and paying judgments rather than using those resources for their intended purposes." *Id*. The court also noted, however, that if a governmental entity "interjects itself into or chooses to engage in litigation to assert affirmative claims for monetary damages, the entity will presumably have made a decision to expend resources to pay litigation costs." *Id*. "If the opposing party's claims can operate only as an offset to reduce the government's recovery, no tax resources will be called upon to pay a judgment, and the fiscal planning of the governmental entity should not be disrupted." *Id*. Accordingly, the court held once a governmental entity asserts affirmative claims for monetary recovery, the entity must participate in the litigation process as an ordinary litigant; provided, however, that: (1) the claims against the governmental entity must be germane to, connected with, and properly defensive to those asserted by the governmental entity; and (2) the governmental entity continues to have immunity from affirmative damage claims against it for monetary relief exceeding amounts necessary to offset the governmental entity's claims. *Id*. at 377. Under those circumstances, the trial court does not acquire jurisdiction over a claim for damages against the governmental entity in excess of the damages recovered by the governmental entity, if any. *Id*.

One of the key requirements to a waiver under the holding in *Reata* is that the damages sought against the governmental entity are limited to an offset against the entity's recovery.

Because the damages must be offset, it necessarily follows that both the claims by the governmental entity and the claims against it must be filed in the same cause. Requiring both claims to be asserted in the same cause allows the governmental entity to continue to evaluate whether pursuing the affirmative claims in a particular case is worthwhile given the distraction and expense of litigation. *See id.* at 382-83 (Brister, J., concurring) (noting "when the government brings its own affirmative claims, it has obviously concluded that the distraction and expense of litigation is worthwhile in that particular case.") Thus, the waiver of immunity is limited to "that particular case" in which the governmental entity decides to assert affirmative claims. *See id.*

In this case, the City never had any pending affirmative claims; therefore, Solis's claim for damages could not be in the nature of an offset, which is the only type of claim for which immunity is waived under *Reata*. Although the City asserted affirmative claims in the prior case, its waiver of immunity was limited to "that particular case" in which it asserted affirmative claims. *See Reata*, 197 S.W.3d at 382-83 (Brister, J., concurring). Accordingly, the City's immunity was not waived based on *Reata*.[2]

## WAIVER UNDER 271.152

If a local governmental entity enters into an authorized contract, it waives sovereign immunity from suit for the purpose of adjudicating a claim for breach of contract. TEX. LOC. GOV'T CODE ANN. § 271.152 (West 2005). The term "contract" as used in section 271.152 is defined as "a written contract stating the essential terms of the agreement for providing goods or services to the local governmental entity that is properly executed on behalf of the local

---

[2] We note that Solis relied on the holding in *Reata* as his only basis for arguing immunity was waived with regard to his intentional tort claims. We further note that the Texas Tort Claims Act does not waive sovereign immunity for intentional torts. *City of San Antonio v. Polanco & Co., L.L.C.*, No. 04-07-00258-CV, 2007 WL 3171360 (Tex. App.—San Antonio Oct. 31, 2007, pet. denied) (mem. op.).

governmental entity." *Id*. at § 271.151(2). Solis asserts the trial court erred in finding the parties did not enter into a contract, asserting the Notice of Award, which was signed by both parties, was a valid written contract. The City counters that although it accepted Solis's bid in the Notice of Award, Solis forfeited the project before a contract was executed.

In order for immunity to be waived under section 271.152, "the entity must in fact have entered into a contract." *City of Houston v. Williams*, No. 09-0770, 2011 WL 923980, at \*4 (Tex. Mar. 18, 2011). "Section 271.151(2) effectively states five elements a contract must meet in order for it to be a contract subject to section 271.152's waiver of immunity: (1) the contract must be in writing, (2) state the essential terms of the agreement, (3) provide for goods or services, (4) to the local governmental entity, and (5) be executed on behalf of the local governmental entity." *Id*. "'[A] court may determine, as a matter of law, that multiple documents comprise a written contract.'" *Id*. at \*6 (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000)). Stated differently, a written contract may be embodied in multiple documents. *Id*. at \*8.

In this case, the parties disagree as to whether the Notice of Award sent to Solis by the City constitutes a contract when coupled with Solis's bid proposal. The fact that parties to an informal agreement contemplate a formal writing does not necessarily prevent the formation of a binding contract. *See Scott v. Ingle Bros. Pac., Inc.*, 489 S.W.2d 554, 556 (Tex. 1972); *WTG Gas Processing, L.P. v. ConocoPhillips Co.*, 309 S.W.3d 635, 645 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Whether the parties intended to make a binding agreement is the determinative issue. *Foreca, S.A. v. GRD Dev Co.*, 758 S.W.2d 744, 746 (Tex. 1988); *Medistar Corp. v. Schmidt*, 267 S.W.3d 150, 157-58 (Tex. App.—San Antonio 2008, pet. denied). Although the parties' intent to be bound is often a question of fact, the court may decide, as a

matter of law, that there existed no immediate intent to be bound. *Foreca, S.A.*, 758 S.W.2d at 746; *WTG Gas Processing, L.P.*, 309 S.W.3d at 643; *Medistar Corp.*, 267 S.W.3d at 158.

In this case, the bid proposal form contemplated a formal signed agreement. The bid proposal form stated, "The undersigned BIDDER proposes and agrees, if this BID is accepted, to enter into an agreement with OWNER in the form included in the Contract Documents." Moreover the Notice of Award notifies Solis that his bid "[h]as been favorable [sic] considered for the project by the City Council." However, the Notice of Award requires Solis to sign the proposed Contract and return it with the required proof of insurance and bonds within ten days "for the approval and signature of the City Manager." Moreover, the Notice of Award states that for purposes of an effective date for the bonds and insurance, "the date of April 3, 2006 may be considered the date of the Contract, if the Documents are approved by the City Manager." Finally, the Notice of Award states, "If you fail to submit the proposed Contract and the Performance and Payment Bonds and the Certificates of Insurance within ten (10) days from your receipt of this Notice, your bid will be considered withdrawn and your bid bond will be forfeited." Solis subsequently sent written notice forfeiting his right to proceed with the project without ever signing and returning the Contract. Accordingly, the language within the Notice of Award conclusively establishes that the City had no intent to be bound until the Contract was executed. Because the Contract was never executed by the City, the City's immunity was never waived under section 271.152.

## CONCLUSION

The City asserted no claims for affirmative relief in the underlying lawsuit, and the record established that no contract was entered into by the City and Solis. Accordingly, the City retained its immunity. The trial court's order is affirmed.

Catherine Stone, Chief Justice