(Slip Opinion) OCTOBER TERM, 2023 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## DEVILLIER ET AL. *v.* TEXAS

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

No. 22–913.   Argued January 16, 2024—Decided April 16, 2024

Richard DeVillier and more than 120 other petitioners own property north of U. S. Interstate Highway 10 between Houston and Beaumont, Texas. The dispute here arose after the State of Texas took action to use portions of I–10 as a flood evacuation route, installing a roughly 3-foot-tall barrier along the highway median to act as a dam. When subsequent hurricanes and storms brought heavy rainfall, the median barrier performed as intended, keeping the south side of the highway open. But it also flooded petitioners' land to the north, causing significant damage to their property. DeVillier filed suit in Texas state court. He alleged that by building the median barrier and using his property to store stormwater, Texas had effected a taking of his property for which the State must pay just compensation. Other property owners filed similar suits. Texas removed the cases to federal court, where they were consolidated into a single proceeding with one operative complaint. The operative complaint includes inverse-condemnation claims under both the Texas Constitution and the Takings Clause of the Fifth Amendment. As relevant, Texas moved to dismiss the federal inverse-condemnation claim, arguing that a plaintiff has no cause of action arising directly under the Takings Clause. The District Court denied Texas' motion, concluding that a property owner may sue a State directly under the Takings Clause. The Fifth Circuit reversed, holding "that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." 53 F. 4th 904 (*per curiam*).

*Held*: DeVillier and the other property owners should be permitted to pursue their claims under the Takings Clause through the cause of action available under Texas law. The Takings Clause of the Fifth

Amendment states: "nor shall private property be taken for public use, without just compensation." The Court has explained that "a property owner acquires an irrevocable right to just compensation immediately upon a taking" "[b]ecause of 'the self-executing character' of the Takings Clause 'with respect to compensation.'" *Knick* v. *Township of Scott*, 588 U. S. 180, 192 (quoting *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U. S. 304, 315). The question here concerns the procedural vehicle by which a property owner may seek to vindicate that right. Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts, see *Egbert* v. *Boule*, 596 U. S. 482, 490–491, and so they are asserted offensively pursuant to an independent cause of action designed for that purpose, see, *e.g.*, 42 U. S. C. §1983. DeVillier relies on *First English* and other cases to argue that the Takings Clause creates by its own force a cause of action authorizing suits for just compensation. But those cases do not directly confront whether the Takings Clause provides a cause of action. It would be imprudent to decide that question without first establishing the premise in the question presented that no other cause of action exists to vindicate the property owner's rights under the Takings Clause. Texas state law does provide an inverse-condemnation cause of action by which property owners may seek just compensation against the State based on both the Texas Constitution and the Takings Clause. This case therefore does not present the circumstance in which a property owner has no cause of action to seek just compensation. The Court therefore remands so that DeVillier and the other property owners may proceed through the cause of action available under Texas law. Pp. 4–7.

53 F. 4th 904, vacated and remanded.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, pio@supremecourt.gov, of any typographical or other formal errors.

# SUPREME COURT OF THE UNITED STATES
_____

No. 22–913
_____

RICHARD DeVILLIER, ET AL., PETITIONERS *v.* TEXAS

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[April 16, 2024]

JUSTICE THOMAS delivered the opinion of the Court.

Richard DeVillier alleges that the State of Texas took his property for stormwater storage. He sought just compensation under the Takings Clause of the Fifth Amendment, arguing that the Constitution itself authorized him to bring suit. We granted certiorari to decide whether "a person whose property is taken without compensation [may] seek redress under the self-executing Takings Clause even if the legislature has not affirmatively provided them with a cause of action." Pet. for Cert. i. That question assumes the property owner has no separate cause of action under which to bring a claim based on the Takings Clause. But, that is not the case here. Texas law provides a cause of action that allows property owners to vindicate their rights under the Takings Clause. We therefore vacate and remand so that DeVillier's claims may proceed under Texas' state-law cause of action.

I

Richard DeVillier and more than 120 other petitioners own property north of U. S. Interstate Highway 10 between

Houston and Beaumont, Texas.[1]  The State of Texas under-
took several projects to facilitate the use of that portion of
the highway as a flood-evacuation route.  It installed a
roughly 3-foot-tall barrier along the highway median to act
as a dam, preventing stormwater from covering the south
side of the road.

In August 2017, Hurricane Harvey brought heavy rain-
fall to southeast Texas.  The new median barrier performed
as intended, keeping the south side of the highway open.
But, it also flooded petitioners' land to the north, displacing
them from their homes, damaging businesses, ruining
crops, killing livestock, and destroying family heirlooms.
The same thing happened during Tropical Storm Imelda in
2019.  As depicted, the median barrier kept the south side
of the highway open (on the left side of both pictures) by
holding back stormwater, which then submerged property
north of the highway (on the right side of both pictures):



Figure 1

_____

[1] Because this case comes to us at the pleading stage, we assume the
truth of the facts alleged in the operative complaint.  See, *e.g.*,
*Swierkiewicz* v. *Sorema N. A.*, 534 U. S. 506, 508, n. 1 (2002).



Figure 2

Because heavy rainfall is not uncommon in southeast Texas, the median barrier will continue to cause flooding on DeVillier's land during future storms.

DeVillier filed suit in Texas state court. He alleged that, by building the median barrier and using his property to store stormwater, Texas had effected a taking of his property. DeVillier argued that he was therefore entitled to just compensation under both the United States and Texas Constitutions. Other property owners filed similar suits. Texas removed the cases to federal court, where they were consolidated into a single proceeding with one operative complaint. The operative complaint includes inverse-condemnation claims under both the Texas Constitution and the Takings Clause of the Fifth Amendment. See *Knick* v. *Township of Scott*, 588 U. S. 180, 186 (2019) ("Inverse condemnation is a cause of action against a governmental defendant to recover the value of property which has been taken in fact by the governmental defendant" (internal quotation marks omitted)).

As relevant, Texas moved to dismiss the federal inverse-condemnation claim, arguing that a plaintiff has no cause

of action arising directly under the Takings Clause. It contended that only Rev. Stat. §1979, 42 U. S. C. §1983, provides a vehicle to assert constitutional violations, and §1983 does not authorize claims against a State. DeVillier did not dispute that he intended to bring his federal claim directly under the Fifth Amendment. Instead, he responded that the Takings Clause is "self-executing," which, he argued, means that the Clause itself provides a cause of action for just compensation.

The District Court denied Texas' motion, concluding that a property owner may sue a State directly under the Takings Clause. The Court of Appeals disagreed. In a one-paragraph opinion, it "h[eld] that the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." 53 F. 4th 904 (CA5 2023) (*per curiam*).

We granted certiorari to decide whether a property owner may sue for just compensation directly under the Takings Clause. 600 U. S. \_\_\_ (2023). We now vacate and remand for further proceedings.

## II

The Takings Clause of the Fifth Amendment states: "nor shall private property be taken for public use, without just compensation." We have explained that "a property owner acquires an irrevocable right to just compensation immediately upon a taking" "[b]ecause of 'the self-executing character' of the Takings Clause 'with respect to compensation.'" *Knick*, 588 U. S., at 192 (quoting *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles*, 482 U. S. 304, 315 (1987)). Texas does not dispute the nature of the substantive right to just compensation. This case presents only a question regarding the procedural vehicle by which a property owner may seek to vindicate that right.

Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. See *Egbert* v. *Boule*, 596 U. S. 482, 490–491 (2022). Instead, constitutional rights are generally invoked defensively in cases arising under other sources of law, or asserted offensively pursuant to an independent cause of action designed for that purpose, see, *e.g.*, 42 U. S. C. §1983. DeVillier argues that the Takings Clause is an exception. He relies on *First English Evangelical Lutheran Church of Glendale* v. *County of Los Angeles* to assert that the just-compensation requirement of the Takings Clause is "self-executing" and that "[s]tatutory recognition [is] not necessary" for takings claims because they "are grounded in the Constitution itself." 482 U. S., at 315 (internal quotation marks omitted). In other words, the Takings Clause creates by its own force a cause of action authorizing suits for just compensation.

The cases that DeVillier cites do not directly confront whether the Takings Clause provides a cause of action for just compensation. *First English* itself proceeded under a state-law cause of action. *Id.*, at 313–314, n. 8. DeVillier also points to several takings cases where property owners sought injunctions to prevent the Government from interfering with their property rights, such as by obtaining easements or imposing zoning regulations. See *Dohany* v. *Rogers*, 281 U. S. 362, 364 (1930); *Delaware, L. & W. R. Co.* v. *Morristown*, 276 U. S. 182, 188 (1928); *Village of Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 384 (1926); *Cuyahoga River Power Co.* v. *Akron*, 240 U. S. 462, 463 (1916); *Norwood* v. *Baker*, 172 U. S. 269, 276 (1898). Because none of those cases relied on §1983 for a cause of action, he reasons that those cases must have proceeded directly under the Constitution. But, the mere fact that the Takings Clause provided the substantive rule of decision for the equitable claims in those cases does not establish that it creates a

cause of action for damages, a remedy that is legal, not equitable, in nature.[2]  That said, the absence of a case relying on the Takings Clause for a cause of action does not by itself prove there is no cause of action.  It demonstrates only that constitutional concerns do not arise when property owners have other ways to seek just compensation.  Our precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause.

But, this case does not require us to resolve that question. The question presented asks what would happen if a property owner had no cause of action to vindicate his rights under the Takings Clause.  It would be imprudent to decide that question without satisfying ourselves of the premise that there is no cause of action.  Our constitutional system assigns to state officers "a coordinate responsibility to enforce [the Constitution] according to their regular modes of procedure."  *Howlett* v. *Rose*, 496 U. S. 356, 367 (1990).  It therefore looks to "[t]he good faith of the States [to] provid[e] an important assurance that 'this Constitution, and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land.'" *Alden* v. *Maine*, 527 U. S. 706, 755 (1999) (quoting U. S. Const., Art. VI; original alterations omitted).  We should not "assume the States will refuse to honor the Constitution," including the Takings Clause, because "States and their officers are [also] bound by obligations imposed by the Constitution."  527 U. S., at 755.

The premise that Texas left DeVillier with no cause of action to obtain the just compensation guaranteed by the Takings Clause does not hold.  Texas state law provides a cause

─────────────

[2] The significance of DeVillier's equitable cases is further obscured by fundamental changes to the law of equity that postdate those decisions. Compare Fed. Rule Civ. Proc. 2 with A. Bellia & B. Clark, The Original Source of the Cause of Action in Federal Courts, 101 Va. L. Rev. 609, 653 (2015).

of action by which property owners may seek just compensation against the State. As Texas explained at oral argument, its state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause. Tr. of Oral Arg. 38; *id.*, at 40 (citing *Baytown* v. *Schrock*, 645 S. W. 3d 174 (Tex. 2022)); Tr. of Oral Arg. 59–60. And, although Texas asserted that proceeding under the state-law cause of action would require an amendment to the complaint, it also assured the Court that it would not oppose any attempt by DeVillier and the other petitioners to seek one. *Id.*, at 41, 61, 64. This case therefore does not present the circumstance in which a property owner has no cause of action to seek just compensation. On remand, DeVillier and the other property owners should be permitted to pursue their claims under the Takings Clause through the cause of action available under Texas law.

## III

The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*