**Affirmed in Part and Reversed and Rendered in Part and Memorandum Opinion filed June 25, 2026**



In The

# Fifteenth Court of Appeals

---

### NO. 15-25-00117-CV

---

**APPELLANT, THE STATE OF TEXAS // CROSS-APPELLANTS, PATRICK COX, FOR HIMSELF AND AS AGENT FOR AOC RANCHES, LLC; TEAM ADVERTISING SERVICES, INC.; CCLHR ENTERPRISES, LLC; AND VPIZZA RESTAURANT 001, LLC,**

**V.**

**APPELLEES, PATRICK COX, FOR HIMSELF AND AS AGENT FOR AOC RANCHES, LLC; TEAM ADVERTISING SERVICES, INC.; CCLHR ENTERPRISES, LLC; AND VPIZZA RESTAURANT 001, LLC // CROSS-APPELLEE, THE STATE OF TEXAS**

---

**On Appeal from the 419th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-19-000436**

---

### MEMORANDUM OPINION

In 2012, the State procured a judgment in a suit against Patrick Cox and two companies. The trial court appointed a receiver who collected on the judgment.

The judgment against Cox was later overturned.

Nearly four years later, Cox filed suit against the State seeking to recover the value of his property. The trial court granted the State's plea to the jurisdiction as to Cox's federal causes of action under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution, but denied the State's plea as to Cox's state claims for civil conversion, restitution, and for violations of the Texas Constitution's Takings and Due Course of Law Clauses. We conclude that sovereign immunity bars all of Cox's claims and affirm in part and reverse and render in part.

## BACKGROUND

In May 2010, the State filed a public enforcement action for violations of the Texas Deceptive Trade Practices Act (DTPA) against Patrick Cox and two companies he founded, TMIRS Enterprises, Ltd. (TMIRS) and TaxMasters, Inc. *Cox v. State*, 448 S.W.3d 497, 501 (Tex. App.—Amarillo 2014, pet. denied). Before trial, TMIRS and TaxMasters filed for bankruptcy. *Id.* In June 2012, a jury found that Cox and the two companies violated the DTPA and assessed restitution and civil penalties against each defendant. *Id.* Cox was personally ordered to pay $14,622,102 in restitution, $31,250,000 in civil penalties, and $315,332.67 in attorney's fees. *Id.* at 500.

After Cox appealed challenging his personal liability, the trial court granted the State's application for turnover and appointment of a receiver. Cox did not file a supersedeas bond. The receivership order authorized the receiver to seize, take possession of, and exercise exclusive control over receivership assets and pay to the State any proceeds from the control of those assets to the extent required to satisfy the judgment. Nine days after the trial court signed the order, Cox filed a statement of net worth with the District Clerk. The trial judge notified Cox that if

2

he wished to lower the prior amount ordered for a supersedeas, he would have to file a motion or challenge the order in a higher court. Ultimately, Cox's challenges related to the supersedeas were unsuccessful. *Cox v. State*, No. 07-12-00453-CV, 2013 WL 609243, at *1 (Tex. App.—Amarillo Feb. 14, 2013, order) (per curiam); *In re Cox*, No. 03-13-00095-CV, 2013 WL 692435, at *1 (Tex. App.—Austin Feb. 15, 2013, orig. proceeding) (mem. op.). Cox did not appeal the turnover order.

The receiver took possession of and sold Cox's non-exempt property and collected a total of $830,756. The receiver and the TaxMasters and TMIRS bankruptcy trustee jointly moved to create a compromise account in the bankruptcy using funds collected by the receiver to be used to pay consumer claimants resulting from the DTPA judgment. The bankruptcy court approved the motion. Of the total collected, $560,207 was deposited into the compromise account, $50,816 was returned to Cox and $496 was returned to TMIRS. The receiver kept $219,238 for the receivership fee and expenses.

On July 1, 2014, the court of appeals reversed the DTPA judgment against Cox, holding that there was no evidence to support liability against him individually. *Cox*, 448 S.W.3d at 507. Nearly two years later, Cox filed for Chapter 11 personal bankruptcy. He notified the receiver in the DTPA case that he had filed for bankruptcy and requested that the receiver file an accounting and return his property to him. The receiver returned various items of personal property and relinquished any interest in stocks and ownership interests in multiple entities. Cox then filed a complaint in the bankruptcy action against the receiver, demanding return of the receiver's fees and expenses. The bankruptcy court granted the receiver's motion for summary judgment, holding that judicial immunity barred any recovery from the court-appointed receiver. *In re Cox*, No. 16–32363–H5–11, 2017 WL 1058263, at *2 (Bankr. S.D. Tex. Mar. 20, 2017).

Meanwhile, the TaxMasters and TMIRS bankruptcy trustee (the "Corporate Trustee") filed a proof of claim for $9 million in Cox's bankruptcy case. Cox and the trustee reached a settlement agreement in which they agreed that the trustee would have a claim against Cox's estate for $1 million. The settlement agreement further provided that Cox "asserts a right to recover approximately $560,000 . . . paid to Trustee from the liquidation of personal and/or real property as part of" the prior motion to compromise. The trustee agreed to transfer $125,000 of that amount to Cox's estate for payment of his attorney's fees and the remaining $435,206.86 would be deemed paid by Cox to the trustee in partial satisfaction of the $1 million claim. The State objected to the funds being paid to Cox rather than to benefit consumer creditors who had been harmed, but the bankruptcy court approved the settlement agreement.

Cox then filed this suit against the State, on behalf of himself and on behalf of AOC Ranches, LLC, Team Advertising Services, Inc., CCLHR Enterprises, LLC and VPizza Restaurant 001, LLC,[1] asking the trial court to "restore the property wrongfully taken from Cox or its equivalent in damages." He claimed that because the receiver sold his property at a forced sale, the proceeds received did not reflect the full value of the property. Cox asserted a claim for restitution, asserting that he was entitled to the difference between the value of the property sold and the amount received for that property. Cox also asserted a claim for civil conversion and claims for due process violations and a taking under the Texas and United States Constitutions. The State filed a combined plea to the jurisdiction and motion for summary judgment asserting that Cox lacked standing and that

[1] In his petition, Cox claimed that he was the "authorized agent" for AOC Ranches, LLC, Team Advertising Services, Inc., CCLHR Enterprises, LLC and VPizza Restaurant 001, LLC. In this court, the State claims that Cox failed to allege any injury to these entities and challenges Cox's standing to assert claims on their behalf. Because we conclude that sovereign immunity bars all of the claims against the State, we do not separately address the plaintiff entities.

sovereign immunity and the applicable statutes of limitations barred Cox's claims. The State also challenged the merits of Cox's claims.

After a hearing, the trial court granted the State's plea to the jurisdiction as to Cox's federal claims but denied the plea as to Cox's claims for civil conversion, restitution, and violations of the Texas Constitution's Takings and Due Course of Law clauses. We address each claim below.[2]

## ANALYSIS

Both the State and Cox challenge the trial court's order. The State asserts that the trial court erred in denying its plea to the jurisdiction as to Cox's state claims because they are barred by sovereign immunity. Cox asserts that the trial court erred in granting the State's plea to the jurisdiction as to his federal claims under 42 U.S.C. § 1983 and the takings clause of the Fifth Amendment.

## I.    Standard of Review

Sovereign immunity prohibits suits against the State unless the State has waived its immunity. *Nazari v. State*, 561 S.W.3d 495, 500 (Tex. 2018). Sovereign immunity implicates a court's subject matter jurisdiction and may therefore be properly challenged through a plea to the jurisdiction. *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020). A plea "may challenge the pleadings, the existence of jurisdictional facts, or both." *Id.* (quoting *Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018)). When the plea challenges

---

[2] In his appellee brief in response to the State's challenge to the partial denial of his plea to the jurisdiction, Cox claims that the State's "arguments attempt to recast Cox's claim as restitution or conversion" but that "the gravamen of this suit is that the State took Cox's property without compensation." However, Cox clearly asserted claims for restitution and conversion and addressed those claims in his response to the State's motion for summary judgment. Further, the trial court explicitly denied summary judgment as to those claims. The State asserts that Cox has abandoned all but his state takings claim, but because Cox did not expressly abandon his additional claims, we will address them.

the pleadings, we look to whether the plaintiff "has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). We construe the pleadings liberally in favor of the plaintiff, accepting all allegations as true. *Id.* The plaintiff bears the burden to allege facts that affirmatively demonstrate the trial court's subject matter jurisdiction. *Id.*

When a plea to the jurisdiction implicates the merits of the plaintiff's case and includes evidence, "the trial court reviews the relevant evidence to determine whether a fact issue exists." *Miranda*, 133 S.W.3d at 227. In evaluating an evidentiary plea, the standard of review "generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* at 228. If the evidence creates a fact question regarding the jurisdictional issue, the trial court may not grant the plea, and the fact issue will be resolved at trial by the fact finder. *Miranda*, 133 S.W.3d at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. Whether the trial court has jurisdiction is a question of law that we review de novo. *Id* at 226.

## II. The Trial Court Erred in Denying the State's Plea to the Jurisdiction as to Cox's State Law Claims.

### A. Civil Conversion

Cox asserted a claim for "civil conversion," claiming that his property was "taken … by the receiver acting for the State of Texas and only a small part has been returned." Conversion is an intentional tort, and tort claims against a governmental entity are governed by the Texas Tort Claims Act. *Curadev Pharma Pvt. Ltd. v. Univ. of Tex. Sw. Med. Ctr.*, 721 S.W.3d 90, 101 (Tex. App.—15th Dist. 2025, pet. filed) (citing Tex. Civ. Prac. & Rem. Code § 101.106). While the

act waives sovereign immunity for certain torts, "it does not waive immunity for claims arising out of intentional torts," including conversion. *Id.* (citing Tex. Civ. Prac. & Rem. Code § 101.057; *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014)). Because the Tort Claims Act does not waive sovereign immunity for the intentional tort of conversion, the trial court erred in failing to dismiss that claim for want of jurisdiction.

## B. Restitution

In the trial court, Cox asserted that Texas law "clearly provides for a former judgment debtor to receive 'restitution' when an opposing party has collected property under a judgment that is subsequently reversed." *See Miga v. Jensen*, 299 S.W.3d 98, 101 (Tex. 2009) ("Restitution after reversal has long been the rule in Texas and elsewhere."); *J & J Container Mfg., Inc. v. Cintas-R U.S., L.P.*, 516 S.W.3d 635, 638 (Tex. App.—Houston [1st Dist.] 2017, no pet.) ("When a judgment is reversed, the prevailing party is entitled to restitution of any sum that it paid in satisfaction of the judgment with interest."). Cox did not seek restitution in the same suit after the judgment against him was reversed. Rather, he brought this claim for restitution in a new suit, asserting that "[a] defendant is entitled to restitution for money and property paid or taken from him pursuant to a judgment that is later reversed" and estimating he was owed "over $20,000,000 in restitution."

"Retrospective monetary relief is generally barred" by immunity. *Chambers-Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *City of El Paso v. Heinrich*, 284 S.W.3d 366, 374 (Tex. 2009)). In his response to the State's plea to the jurisdiction, Cox asserted that his claim for restitution is "not a claim for 'money damages,'" but rather he is seeking a refund. But the State generally retains immunity even in a suit for a "refund" unless waived. *See EBS*

*Sols., Inc. v. Hegar*, 601 S.W.3d 744, 750 (Tex. 2020) (recognizing that, under the relevant statute, the Legislature had waived the State's sovereign immunity as to suits for tax refunds in certain situations); *In re Nestle USA, Inc*., 359 S.W.3d 207, 212 (Tex. 2012) ("To compel a tax refund by mandamus is to grant retrospective monetary relief. Retrospective monetary claims, even by way of mandamus or declaratory relief, are generally barred by immunity, absent legislative consent.").

Cox cited two cases in support of his claim that a suit seeking to recover "money wrongfully taken by the government" is a suit for "a refund" to which sovereign immunity does not apply, but neither case is applicable here. *See Wilder v. Merritt*, No. 02-16-00477-CV, 2017 WL 5494258 (Tex. App.—Fort Worth Nov. 16, 2017, pet. denied) (mem. op.); *Brennan v. City of Willow Park*, 376 S.W.3d 910 (Tex. App.—Fort Worth 2012, pet. denied). In the cases relied on by Cox, the plaintiffs sought refunds of fees and taxes paid under duress because of the governmental actors' void actions. *Wilder*, 2017 WL 5494258, at *6; *Brennan*, 376 S.W.3d at 925. Those cases align with the well-settled proposition that "a party who pays an illegal or invalid fee to a governmental unit under duress may seek a refund regardless of whether immunity has been waived." *Kubosh v. Harris Cnty.*, 416 S.W.3d 483, 487 (Tex.—App. Houston [1st Dist.] 2013, pet. denied); *see Dallas Cnty. Cmty. Coll. Dist. v. Bolton*, 185 S.W.3d 868, 877 (Tex. 2005) ("Reimbursement of illegal fees and taxes is allowed, in essence, when the public entity compels compliance with a void law and subjects the person to punishment if he refuses or fails to comply."). Because this case does not involve the payment of an illegal tax or fee under duress, the refund cases relied on by Cox are inapposite.

Cox's attempt to characterize his claim as one for restitution and not damages to avoid immunity is also groundless. The Supreme Court has explained

that a party cannot circumvent sovereign immunity by re-characterizing a claim for money damages as a claim for "restitution." *Chambers-Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 347 ("Whether the claim is one for actual damages in a common-law suit or a statutory claim for 'restitution,' both claims seek retrospective monetary relief against the government. Immunity bars them both."); *Denver City Indep. Sch. Dist. v. Moses,* 51 S.W.3d 386, 392–93 (Tex. App.— Amarillo 2001, no pet.) (declaratory judgment action that sought restitution of money paid under a contract was a suit for money damages which was barred by immunity). Despite Cox's characterization of his claim as one for restitution, he is seeking retrospective monetary relief against the State and as such it is barred by immunity.

Cox also claimed that the State did not have immunity because it had filed suit against Cox. Cox relies on *Reata Construction Corp. v. City of Dallas*, in which the Supreme Court held that where a governmental entity has asserted its own claims for monetary relief, it does not have immunity from suit for claims against it which are "germane to, connected with, and properly defensive to" its claims to the extent any recovery on those claims will offset any recovery by the governmental entity. 197 S.W.3d 371, 376–77 (Tex. 2006). But *Reata* only applies when claims by the governmental entity and claims against it are brought in the same suit. *Solis v. City of Laredo*, 353 S.W.3d 528, 531–32 (Tex. App.—San Antonio 2011, no pet.). One of the key holdings in *Reata* is that any recovery from a governmental entity is "limited to an offset against the entity's recovery." *Id.* at 531; *Reata*, 197 S.W.3d at 377. Because the State has no pending claims against Cox, Cox's recovery of damages could not offset any recovery by the State.

Additionally, the Court in *Reata* explained that "[a] lack of immunity may hamper governmental functions by requiring tax resources to be used for defending

lawsuits and paying judgments rather than using those resources for their intended purposes." 197 S.W.3d at 375. So, when a governmental entity chooses to assert its own claims for relief, it has presumably "made a decision to expend resources to pay litigation costs." *Id.* But the State made no decision to expend resources to pay litigation costs in this suit brought by Cox. *Reata* therefore does not apply in this case. The trial court lacked jurisdiction over Cox's suit for restitution against the State and the trial court erred in failing to dismiss it.

### C. Due Course of Law

The Texas Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges[,] or immunities . . . except by the due course of the law of the land." Tex. Const. art. I, § 19. Cox brought a claim for violation of his rights under this section, asserting that when the court of appeals reversed the DTPA judgment against him, the court "invalidated the process by which the State took Cox's property to satisfy the judgment." A plaintiff whose constitutional rights have been violated may sue the State for equitable or injunctive relief. *City of Beaumont v. Bouillion,* 896 S.W.2d 143, 148–49 (Tex. 1995). However, the Texas Bill of Rights, which includes the due course of law provision, does not provide a private right of action for damages against the State. *Id.* (explaining that only one provision of the Bill of Rights—the takings clause—provides a "textual entitlement to compensation in its limited context").

The Supreme Court later applied *Bouillion* when considering whether a trial court should have dismissed a claim asserting a deprivation of rights under the due course of law clause. *City of Elsa v. M.A.L.*, 226 S.W.3d 390, 391–92 (Tex. 2007) (per curiam). The plaintiffs sought both injunctive and monetary relief from the City of Elsa, and the City filed a plea to the jurisdiction regarding all the claims. *Id.* at 391. The Supreme Court held that under *Bouillion*, the suit for injunctive relief

10

against a governmental entity may be maintained, but the Court ordered the claims for monetary relief dismissed. *Id.* at 392.

Cox did not seek any equitable or injunctive relief. He sought only monetary relief under his due course of law claim. Because the Texas Constitution does not provide a cause of action for monetary damages for violation of the due course of law provision, the trial court erred in denying the State's plea to the jurisdiction for Cox's claim.

### D. State Takings Claim

Sovereign immunity does not bar a claim for violation of constitutional rights, but "immunity from suit is not waived if the constitutional claims are facially invalid." *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 13 (Tex. 2015). Under the Texas Constitution's takings clause, "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17(a). Accordingly, "[w]hen the government takes private property without first paying for it, the owner may recover damages for inverse condemnation." *Tex. Dep't of Transp. v. Self*, 690 S.W.3d 12, 25 (Tex. 2024) (quoting Tarrant Reg'l Water Dist. v. Gragg, 151 S.W.3d 546, 554 (Tex. 2004)). A claimant alleging an inverse condemnation or takings claim must show "(1) an entity with eminent domain power intentionally performed certain acts (2) that resulted in taking, damaging, or destroying the property for, or applying it to, (3) public use." *Id.* at 26. Accordingly, "[i]n the absence of a properly pled takings claim, the state retains immunity." *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012).

The State claims that Cox's takings claim under the Texas Constitution is facially invalid on multiple grounds. According to the State, because the State was

11

acting within its rights when it enforced the 2012 judgment, it did not have the requisite intent to support a taking. In response, relying on *Heckman v. Williamson County*, 369 S.W.3d 137, 150 (Tex. 2012), Cox claims that whether he can ultimately prevail on his takings claim goes to the merits and not the court's jurisdiction. But this ignores that Cox has the burden to demonstrate jurisdiction. *Id.* And a plea to the jurisdiction may challenge the pleadings or the existence of jurisdictional facts. *Miranda*, 133 S.W.3d at 226. ("[I]n some cases, disputed evidence of jurisdictional facts that also implicate the merits of the case may require resolution by the finder of fact."). Accordingly, we consider whether the State had the requisite intent.

In *Self*, the Supreme Court clarified the intent necessary to support a takings claim. 690 S.W.3d at 26. As part of a highway maintenance project, Texas Department of Transportation (TxDOT) directed its contractors to remove trees in its right of way up to the fence which mistakenly included trees on the Self's neighboring property. *Id.* at 17–18. The Selfs filed an inverse condemnation claim in which TxDOT conceded that it had directed the contractor to remove trees to the fence line, but in a plea to the jurisdiction it asserted that "the Selfs failed to offer evidence that TxDOT intended to have trees removed from property outside its right-of-way." *Id.* at 18.

The Court explained that an intentional act requires evidence that the governmental entity "(a) intended to damage the property or (b) knew that its conduct was causing identifiable harm or that specific property damage was substantially certain to result from the conduct." *Id.* at 26 (citation modified) (quoting City of Dallas v. Jennings, 142 S.W.3d 310, 313–14 (Tex. 2004)). But the Court also explained that under the Takings Clause, a property owner is not required to prove "the government had a particular 'impetus' or mindset regarding

12

whether its intentional taking of property for public use was permissible." *Id.* at 30. The Court rejected the court of appeals' conclusion that the Selfs were required to prove that TxDOT intended to cut down the Selfs' trees and not trees that TxDOT simply assumed were within the right-of-way. *Id.* at 29. The Court held that "the Constitution means what it says: the government must pay compensation when it intentionally takes private property for public use—even if the government mistakenly believes that it has a legal right to do so apart from its power of eminent domain." *Id.*

In *Self*, the Court stressed that the government's subjective belief regarding its rights to the property is not controlling in a takings case: "we are not persuaded that the State's subjective belief regarding its title to or rights in property, by itself, changes or dictates the capacity in which the State acts." *Id.* at 30 (citation modified) (quoting *Koch v. Tex. Gen. Land Off.*, 273 S.W.3d 451, 458 (Tex. App.—Austin 2008, pet. denied)). But the Court also recognized that situations may exist in which the government has more than a subjective belief: "*Absent a determination* that the State is, in fact, the property owner or has other rights in the property, the State's intentional act of taking property for public use is an exercise of its eminent domain powers that requires compensation." *Id.* (emphasis added) (citation modified) (quoting *Koch*, 273 S.W.3d at 458). The Court further explained that the government may not "escape liability for inverse condemnation merely by *asserting* that it owns or has rights to—or thought at the time of the taking that it owned or had rights to—property it intentionally took, damaged, destroyed, or appropriated for public use." *Id.* at 29. Rather, "[t]he point of a constitutional action for inverse condemnation is to allow private property owners to obtain compensation for other intentional government conduct that takes, damages, destroys, or appropriates their property for public use *without any valid*

13

*legal basis* other than eminent domain." *Id* at 30 (emphasis added).

In this case, the State did not simply assert that it had rights to Cox's property. It did, in fact, have a valid legal basis. The trial court in the State's DTPA suit against Cox determined that the State had rights to the property pursuant to the State's judgment against Cox. The trial court entered an order granting the State's Application for Turnover After Judgment and Appointment of Receiver, finding that the State "should and is entitled to collect upon a true, final and subsisting judgment against" Cox. Cox even acknowledged in his pleading that the State had a valid legal basis to the property, noting that the State "had the legal ability to enforce the Judgment when it did." And because Cox did not challenge the turnover order on appeal, it has never been overturned. *See Davis v. West*, 317 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (explaining that a turnover order is a final, appealable order that "must be attacked on direct appeal"); *see also In re Cox*, 2017 WL 1058263, at *2 (holding that the trial court in the DTPA suit against Cox "had jurisdiction to enter the judgment against Debtor, and to order the appointment of a receiver").

The Court in *Self* cited multiple courts of appeals opinions in support of the statement that "the government must pay compensation when it intentionally destroys private property for public use with the *mistaken* belief that it has a legal right to do so . . . ." *Id.* at 30 & n.25 (emphasis added). But in none of those cases was the government acting pursuant to a court order granting legal rights to the property as the State was here. *See, e.g.*, *State v. BP Am. Prod. Co.*, 290 S.W.3d 345, 363 (Tex. App.—Austin 2009, pet. denied) (rejecting the State's claim that it did not have the requisite intent for a taking where the State had "asserted rights to and leased the disputed property under color of a claim of title" but where ownership of the property was the underlying dispute); *Koch*, 273 S.W.3d at 459

14

("When a plaintiff alleges a state taking of property and title to that property is in dispute, the State cannot evade its constitutional obligations merely by asserting that it "believes" it is acting as landowner . . . ."); *Porretto v. Patterson*, 251 S.W.3d 701, 709 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (rejecting the government's claim that it "had no intent to take the . . . land, but rather only to assert the government's 'rights,'" noting that "the government offered no evidence on the issue of ownership or title, or even a colorable assertion of ownership in the land").

In this case, the State presented uncontroverted evidence that it had rights to the property at issue pursuant to a valid, unchallenged court order. Because the State did not act absent a determination that it did in fact, have rights in the property, it has not committed a compensable taking. *See Self*, 690 S.W.3d at 30 (citing *City of Dallas v. Stewart*, 361 S.W.3d 562, 569–70 (Tex. 2012) ("[A]lthough a government entity 'commits no taking when it abates what is, in fact, a public nuisance' as determined by a court, the government cannot avoid paying compensation based simply on its own declaration that the property is a nuisance."). The trial court erred in denying the State's plea to the jurisdiction as to Cox's takings claim under the Texas Constitution.

## III. The Trial Court Properly Granted the State's Plea to the Jurisdiction as to Cox's Federal Claims.

The trial court granted the State's plea to the jurisdiction as to Cox's federal causes of action under 42 U.S.C. § 1983 and the Fifth and Fourteenth Amendments to the United States Constitution.[3] In this Court, Cox claims that dismissal of his claims was improper because federal claims are actionable in state court and he

---

[3] Cox also brought a claim for violation of his due process rights under the United States Constitution. *See* U.S. Const. amend. XIV. The trial court granted the State's plea to the jurisdiction as to that claim, but Cox does not challenge that ruling in this Court.

adequately pled a takings claim.

## A. 42 U.S.C. Section 1983

Under Section 1983, an individual whose rights, privileges, or immunities have been deprived under color of law may seek redress against the person who violated those rights. 42 U.S.C. § 1983. Cox claims "that state courts have both the power and the obligation to hear federal takings claims" and "nothing in 42 U.S.C. § 1983 or the Takings Clause itself removes this jurisdiction." To the extent Cox is asserting that the trial court erred in dismissing his claim under Section 1983, we disagree. The Texas Supreme Court has explained that "the State and its officials sued in their official capacities are immune from money damages sought in a Section 1983 claim unless they waive their immunity. It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so." *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) (citation omitted); *see Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (holding that a Section 1983 claim against a state is barred unless the state has waived immunity or Congress acts to override that immunity). Because the State is immune from suit regarding Cox's Section 1983 claim, the trial court properly dismissed the claim.

## B. Federal Takings Claim

We next address whether the trial court properly granted the State's plea to the jurisdiction as to Cox's federal takings claim. The Fifth Amendment to the United States Constitution provides that no private property shall "be taken for public use, without just compensation." U.S. Const. amend. V. As explained above, sovereign immunity shields the State from a lawsuit unless immunity has been waived, and "[i]n the absence of a properly pled federal takings claim, the State retains immunity." *Hearts Bluff Game Ranch, Inc.*, 381 S.W.3d at 476. Accordingly, to establish the existence of jurisdiction, a plaintiff must plead a

16

viable takings claim under the United States Constitution. *See id.* at 491.

In the trial court, the State challenged Cox's Fifth Amendment takings claim on multiple grounds, including asserting that under *DeVillier v. Texas*, 601 U.S. 285 (2024), Cox could not pursue such a federal claim. In *DeVillier*, the United States Supreme Court "granted certiorari to decide whether a property owner may sue for just compensation directly under the Takings Clause." *Id.* at 290. It was reviewing the Fifth Circuit's holding "that 'the Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state.'" *Id.* (quoting *Devillier v. State*, 53 F.4th 904, 904 (5th Cir. 2023) (per curiam), *vacated and remanded*, 601 U.S. 285 (2024)). The Supreme Court explained that "Constitutional rights do not typically come with a built-in cause of action to allow for private enforcement in courts. Instead, constitutional rights are generally . . . asserted offensively pursuant to an independent cause of action designed for that purpose," such as under 42 U.S.C. § 1983. *Id.* at 291 (citation omitted) (acknowledging the State's argument that section 1983 "does not authorize claims against a State").

The Court recognized its "precedents do not cleanly answer the question whether a plaintiff has a cause of action arising directly under the Takings Clause," but ultimately declined to address the issue. *Id.* at 292. The Court explained that "this case does not require us to resolve that question. The question presented asks what would happen if a property owner had no cause of action to vindicate his rights under the Takings Clause." *Id.* This was important because, as the Court explained, "constitutional concerns do not arise when property owners have other ways to seek just compensation." *Id.* The Court concluded that Devillier was not left without a remedy because "Texas state law provides a cause of action by which property owners may seek just compensation against the State." *Id.* at 293.

In this case, the State asserted in the trial court that Cox's takings claim under the Fifth Amendment must be dismissed under *DeVillier* because a takings cause of action may only be pursued "through an inverse condemnation cause of action under Texas law." In his appellant's brief, Cox asserts that the trial court erred in dismissing his takings claim under the Fifth Amendment because federal takings claims are cognizable in state court[4] and he adequately pled a takings claim. But Cox fails to address whether under *DeVillier* he had a viable Fifth Amendment takings claim for damages when Texas "state-law inverse-condemnation cause of action provides a vehicle for takings claims based on both the Texas Constitution and the Takings Clause." *Id.*

When a trial court grants a plea to the jurisdiction without specifying the grounds as the trial court did here, an appellant must challenge each independent ground on appeal to obtain a reversal. *Britton v. Tex. Dep't of Crim. Just.*, 95 S.W.3d 676, 680–81 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Because Cox did not address the State's ground raised under the Supreme Court's holding in *DeVillier*, we must affirm the adverse ruling. *See id.*

Because we conclude that the trial court lacked jurisdiction over Cox's claims based on sovereign immunity, we need not address whether the trial court also lacked jurisdiction based on Cox's lack of standing or because his claims were barred by the expiration of the statute of limitations.

---

[4] The cases Cox cites in support of his assertion that takings claims are cognizable in state court all pre-date *DeVillier* and do not involve a situation similar to this case where a plaintiff has asserted a takings claim directly under the Fifth Amendment against a state. For example, as the Court explained in *DeVillier*, *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304 (1987), "proceeded under a state-law cause of action." *DeVillier*, 601 U.S. at 291. And in *Knick v. Township of Scott*, 588 U.S. 180, 184, 187 (2019), the plaintiff did not bring a suit directly under the Fifth Amendment but brought a claim under Section 1983 against a local governmental entity.

## CONCLUSION

We reverse the trial court's order in part and render judgment dismissing Cox's claims for civil conversion, restitution, and for violations of the Texas Constitution's Takings and Due Course of Law Clauses for lack of jurisdiction. The order is otherwise affirmed.

/s/ April Farris
April Farris
Justice

Panel consists of Chief Justice Brister and Justices Field and Farris.